No. 21163.

Thomas K. Hudson *v.* The American Founders
Life Insurance Company of Denver, Colorado,
a Colorado Corporation.

(417 P.2d 772)

Decided August 29, 1966. Rehearing denied September 19, 1966.

CLARENCE W. BUTTON, ALICE LOVELAND, for plaintiff in error.

YEGGE, HALL and SHULENBURG, for defendant in error.

*In Department.*

Opinion by MR. CHIEF JUSTICE SUTTON.

THIS writ of error challenges an order made by the district court in a proceeding held pursuant to R.C.P. Colo. 69 (f) which dispersed certain money held by the trial court in *custodia legis*. The plaintiff in error will be referred to by name or as the debtor; the defendant in error as American or as the garnisher; and Western Oil Fields, Inc. as Western or the garnishee.

The rather lengthy basic facts may be summarized as follows: On November 7, 1959, American obtained a judgment jointly and severally against Thomas K. Hudson and Robert E. Holland in the amount of $37,400 and costs. The judgment was never satisfied.

On May 1, 1961, Hudson was issued a citation "to appear and answer concerning his property." This citation was heard and dismissed, "and the defendant discharged." Nothing further concerning this hearing appears in the record.

Thereafter, on February 26, 1963, Hudson obtained a judgment against Western in the amount of $69,584.81. Displaying understandable vigilance, American caused a writ of garnishment to be served on Western the same day. In answer to the interrogatories incorporated into the writ, the garnishee submitted the following replies which were not sworn to as required by R.C.P. Colo. 103 (f) at the time of submission:

"Western Oil Fields, Inc., has been notified that Clarence Button and Alice Loveland claim an attorney's lien in Civil Action No. B-25184 [Hudson v. Western] for an undivided one-half of any and all monies, property,

and choses in action recovered by Thomas K. Hudson in Civil Action No. B-25184.

. "Western Oil Fields, Inc., has also been notified of a purported assignment by Thomas K. Hudson on August 15, 1958, to one C. M. Brown of Santa Clara, California, of one-half of the net proceeds from that certain claim against Western Oil Fields, Inc., then pending in the District Court in Denver wherein Hudson is plaintiff and Western Oil Fields, Inc., is defendant, Civil Action No. B-25184, 'the one-half of net proceeds to be computed after the payment of attorney's fees which are upon a fifty percent contingent basis and costs.'" (Part in brackets added.)

American does not question the claim for attorneys' fees which had evidently been paid out at the time of this action. Therefore, the amount which was made the subject of the garnishment action came to $35,278.60.

Hudson apparently had difficulties in getting Western to pay the full amount of his judgment against it; this necessitated his bringing a garnishment action in the amount of $18,328.87, naming the Central Bank and Trust Company as garnishee. American attempted unsuccessfully on two occasions to intervene in that proceeding. The net result, however, was that the full amount of Hudson's garnishee judgment against the Central Bank was deposited with the district court. No effort to review American's attempts to intervene was taken by it.

On April 19, 1963, American moved to have Clarence Button, Alice Loveland and *C. M. Brown* served. The motion was granted. Both Mr. Button and Miss Loveland were personally served in Colorado, whereas, following leave by the district court, C. M. Brown, a nonresident, was served by publication. It appears that Brown entered a special appearance through her attorneys, Button and Loveland, and moved to quash process and service. *No disposition was ever made of this motion.*

On June 26, 1963, the garnisher filed its motion under

Rule 69(f) seeking to have one-half of the funds representing Hudson's judgment against Western (*i.e.,* $35,278.60) turned over to it. This motion was granted on October 8, 1963, subject to a stay should the debtor wish to apply to this court for relief. Following the denial of his motion for a new trial and rehearing, Hudson sought relief by way of writ of error.

Hudson assigns several basic grounds of error, one of which incorporates some additional fundamental and differing contentions. To facilitate ease of analysis, these assertions may be summarized as follows:

(1) That the court was barred from proceeding under the provisions of R.C.P. Colo. 69(f) because:

(a) The provisions of subsection (f) R.C.P. Colo. 69 cannot be invoked unless and until the provisions of subsections (d) and (e) of the same rule have first been met and the court, therefore, had no jurisdiction;

(b) Even if a supplemental proceeding could be brought directly under subsection (f), the funds in question were exempt from execution by virtue of the court's holding them in *custodia legis;* and,

(c) The district court had no jurisdiction to proceed as it did since there was evidence that at least part of the funds may be the property of a third person, namely C. M. Brown whose motion has not yet been heard.

And,

(2) That American's failure in its attempts to intervene in Hudson's garnishment action against the Central Bank and Trust Company acts as a bar here under the doctrine of *res judicata.*

 There appears to be no authority for Hudson's first contention. R.C.P. Colo. 69 deals with supplemental proceedings available to a judgment creditor which enable him to enforce the collection of a judgment. Subsection (d) permits the judgment creditor to require a judgment debtor to appear before the court to answer questions concerning his assets. Subsection (e) permits the court, upon proper proof, to examine a third person

who is believed to hold property of, or owe a debt to the judgment debtor. Finally, subsection (f) provides that if certain prerequisites are met, the trial court may order the property applied to the judgment. It is clear that sections (d) and (e) are methods of discovery, whereas section (f) is an enforcement provision.

R.C.P. Colo. 69 (f) provides as follows:

"(f) *Order for Property to Be Applied on Judgment; Contempt*. The court or master may order any property of the judgment debtor not exempt from execution, in the hands of such debtor or any other person, or due the judgment debtor, to be applied towards the satisfaction of the judgment. * * *"

In the case before us, the existence and location of the property was already known. To give the rule the debtor's interpretation would require the doing of useless acts, and limit the effectiveness of the rule's provisions. The fact that Hudson was "discharged" on a prior occasion from a citation obviously issued pursuant to subsection (d), did not bar American from seeking to obtain, under the provisions of subsection (f), known property held by a third person, in this case the district court itself.

Hudson next argues that since the funds were held by the district court in *custodia legis,* they were exempt from execution, and the money could not be distributed. In this regard he mistakes a court *ordering* for a sheriff *levying* on the funds. To permit such an argument to apply would lead to the anomalous conclusion that a creditor has a right to garnish property to pay his judgment, and to have it deposited in the district court's registry, but that once it is so deposited, the same creditor cannot obtain it simply because the district court has it in *custodia legis*. To state this argument in terms of such a conclusion is to refute its soundness. In this regard the case of *Bank of Minnesota v. Hayes,* 11 Mont. 533, 29 Pac. 90 (1891), relied on by American concerning court held property, is very

much in point. We quote the following excerpts with approval:

"As we understand the doctrine of exemption of money in *custodia legis* from levy, it is on the ground, among others, 'that otherwise a conflict must arise between different officers seeking, in the performance of their duties, to seize the same property.' " * * *

* * *

"* * * But the case before us is different. * * * It is the principle and policy of the law to subject all property of the judgment debtor, not specially exempt, to the payment of his debts. * * * Then why may not the District Court have made the order that it did? It had the defendant Hayes before it. It had the money in court. No third persons claimed it. There was no clash of rival officers attempting to get it. There was no collision between two courts as to the money. No person was interfering with the conduct of the court's business, as might occur if the court's receiver were garnished, or property in his hands levied upon. The reasons of the doctrine of exemption of money in *custodia legis* wholly disappear from this case. It was eminently just that defendant's unencumbered and unexempted property should be applied to satisfy a judgment against him, when it could be done with prejudice to no one, and without disturbing the proceedings of any court, and without interfering with the officer of any court in the performance of his duty to the court or litigants therein."

■ Hudson, however, points out that in the *Bank of Minnesota* case the court expressly indicated that the rule set forth therein will not apply when certain conditions are present; and that the property being subject to claims of third persons is one of these. We will discuss that point *infra* when we consider C. M. Brown's rights, but clearly as to Hudson's interest in the money in *custodia legis* no such rule can apply. As to Hudson, he admits that at least one-half of the remaining

$35,278.60 was his property so as to that portion, at least, the trial court undeniably was correct in ordering it paid over to American.

We will next discuss the disposition of the one-half of the funds which purportedly belonged to Brown. At first blush it would appear that Brown's motion to quash service of process should have been ruled upon before the court proceeded to dispose of the subject matter claimed by Brown. We, however, agree with that court that such was not necessary in the instant case because the garnishee's answer had not been sworn to as required by Rule 103(f) and therefore had no legal efficacy. In addition, we deem the wording quoted above to be insufficient as a matter of substance to establish Brown's rights, if any, under the answer. The fact that Hudson himself later filed an affidavit to try and bolster Brown's claim, likewise can have no legal effect in this type of situation. The garnishee was in technical default to Brown's possible damage, but that was of no concern to Hudson. In other words, Hudson is not the proper party to assert Brown's claim here or against Western. And, we note that Brown took the anomalous position of resisting the service on her by publication when a Colorado court had jurisdiction *in rem* over the res. This occurred when Brown herself was the proper person to come in and prove the validity of the asserted prior assignment to her by Hudson. We conclude, therefore, that the trial court had jurisdiction to order the payment of the entire $35,278.60 to American under these circumstances. And, this is so even though American did not traverse the garnishee's answer which failure, if a proper answer had been filed, would have had the effect of legally creating an acceptance of the validity of Brown's claim by American. In turn, this could then have defeated its claim to that one-half of the money in this proceeding.

Hudson's final assignment of error is also without merit. The two rulings denying American the

right to intervene in Hudson's garnishment action against the Central Bank and Trust Company were not *res judicata* as to the issues presented by American's proceeding under R.C.P. Colo. 69 (f) in this action which is not between the same parties. In addition, the two rulings appear to have been only interlocutory in nature and were not final judgments from which a writ of error would lie. *Burks v. Maudlin,* 109 Colo. 281, 124 P.2d 601 (1942). A final judgment is required to bring the doctrine into play, 30 Am. Jur., *Judgments,* § 339.

The judgment is affirmed.

MR. JUSTICE FRANTZ and MR. JUSTICE SCHAUER concur.