553 P.2d 95 (1976)
FORT COLLINS PRODUCTION CREDIT ASSOCIATION, Plaintiff-Appellee and Cross-Appellant,
v.
CARROLL DAIRY et al., Defendants-Appellants and Cross-Appellees, and
L. Wayne Wells, as Public Trustee of Weld County, Colorado, et al., Defendants.
No. 75-470.
Colorado Court of Appeals, Div. II.
April 29, 1976.
As Modified on Denial of Rehearing May 27, 1976.
*96 Hill & Hill, Alden V. Hill, Fort Collins, for plaintiff-appellee and cross-appellant.
Joseph R. Marranzino, Stephen E. Tinkler, Leo Gemma, Jr., Denver, for defendants-appellants and cross-appellees.
Selected for Official Publication.
STERNBERG, Judge.
Plaintiff, Fort Collins Production Credit Association, financed the operations of the defendants Carroll, d/b/a Carroll Dairy. Upon default, the Association sued on their notes and other security instruments. The court found that the Carrolls were in default, and, after crediting the sums received from sale of the assets and debiting for certain valid expenditures made by the Association, it found that the amount still owing was $199,652.27 and entered judgment in favor of the Association and against the Carrolls in that amount.
Both parties appeal the judgment of the trial court. The Carrolls contend that the Association's lien upon their real property was invalid and that the court awarded the Association funds which belonged to the Carrolls. The Association in its cross-appeal urges that the court erred in finding that certain assets were not covered by their security agreements and that in any event these assets should have been awarded to them under C.R.C.P. 69(f). We affirm.
The Carrolls began operating the dairy farm that is the subject of this action in 1968. Between September of that year and November of 1973, the Association financed this business and made loans which were evidenced by eight promissory notes. A deed of trust on the farm securing the first of those notes was executed on December 2, 1969, and recorded on May 19, 1970. Also, financing statements and security *97 agreements securing the notes were executed covering livestock, milk, and other personal property.
On August 8, 1974, the Association filed suit alleging default on the indebtedness and seeking to foreclose on the real estate and the personal property which secured the debt. The court appointed the Association's president receiver. When the Carrolls abandoned the property on September 10, 1974, the Association took possession and operated the business for over a month. Pursuant to court order, the Association sold some of the property covered by their security documents.

VALIDITY OF THE DEED OF TRUST
The Carrolls argue that the 1969 note which was secured by the deed of trust had been "cancelled" and thus the lien of the deed of trust lost. The record reflects that the note remained in the files of the Association and was not cancelled. However, even assuming that the note had been cancelled, subsequent security agreements made reference to the trust deed, and the parties treated it as a valid security instrument; thus, the court correctly concluded that it was the intention of the parties that the trust deed remain in effect as a valid encumbrance against the real estate.
Furthermore, we find no merit in the Carrolls' contention that the deed of trust, by being mentioned in other agreements, was governed by the provisions of the Uniform Commercial Code. By its very terms the UCC does not apply "to the creation or transfer of an interest in or lien on real estate . . . ." Section 4-9-104(j), C. R.S.1973.

SECURITY INTEREST IN "PROCEEDS"
The court awarded to the Association monies owed to the Carrolls for milk production for August and part of September 1974, as well as funds resulting from milk production but held by the Mountain Empire Dairymen's Association in a revolving fund. Carrolls' contention that the court erred in not crediting them with these funds presents a more difficult question, but we conclude that the issue was decided correctly.
First, the Carrolls' argument that these monies were not "proceeds" from the sale of secured property is answered by the language of § 4-9-306(1), C.R.S.1973, of the Uniform Commercial Code, which defines "proceeds" as "whatever is received when collateral . . . is sold . . . ."
Alternatively, the Carrolls urge that if these monies are considered proceeds from the sale of secured property, i. e., milk, such proceeds were not mentioned in any security agreement and thus should not have been awarded to the creditor.
During the course of their dealings, the Carrolls executed eleven security agreements with the Association, each of which covered all milk produced by cattle owned by the Carrolls. The word "proceeds" was not contained in these security agreements although it was contained in financing statements which were later filed. A separate agreement in 1971 executed by the Carrolls purported to give the Association a security interest in milk base. In each of the security agreements, sale of collateral (which included milk) was authorized by the secured party, providing payment be made jointly to the debtor and the secured party. But, again, the term "proceeds" was not used. Thus, the basic issue is whether, absent use of the specific word "proceeds" in a security agreement, the lender continues, under the UCC, to have a secured interest in money received from the sale of personalty covered specifically in the agreement.
There is an apparent inconsistency and ambiguity in the UCC on the subject of proceeds. In § 4-9-203, C.R.S.1973, the formal requisites for the enforceability of a security interest are set forth. In subsection (b) thereof it is provided that "[i]n describing collateral, the word `proceeds' is sufficient without further description to cover proceeds of any character." *98 The Carrolls rely upon this section in urging the necessity of including the term "proceeds" within the security agreement. But § 4-9-306(2), C.R.S.1973, provides:
"Except where this article otherwise provides, a security interest continues in collateral notwithstanding sale, exchange, or other disposition thereof by the debtor unless his action was authorized by the secured party in the security agreement or otherwise, and also continues in any identifiable proceeds including collections received by the debtor." (emphasis supplied)
The inconsistency between the two foregoing provisions has been noted by writers in the field of commercial law. See e. g., 1B Bender's Uniform Commercial Code Service § 24.04[1]. However, in 1 G. Gilmore, Security Interests in Personal Property 351, the author states that:
"One of the basic concepts of Article 9 is that on disposition of collateral the secured party's interest automatically shifts to any proceeds received by the debtor.. . . It is entirely clear that under § 9-306 the security interest shifts automatically from original collateral to proceeds. It is not necessary that either security agreement or financing statement contain a proceeds clause, and the inclusion of such a clause in a financing statement has to do only with continuing the interest in a perfected status."
While the reported cases dealing with this topic are scant, some guidelines do exist. In Bogus v. American National Bank, 401 F.2d 458 (10th Cir.), a bank took a security interest in bar supplies, equipment and a liquor license. The security agreement did not contain the term "proceeds." When the owner of the bar defaulted on his loan, he sold the bar equipment and license and paid the proceeds to the bank. The owner was adjudicated a bankrupt based on this transaction being an act of bankruptcy and the trustee sought to recover the proceeds of the sale. Using § 9-306(2) of the Wyoming Uniform Commercial Code as the basis for its ruling, the court held that the bank's security interest continued in the proceeds of the sale thus defeating the claim of the trustee in bankruptcy. See also Clatworthy v. Ferguson, 72 Colo. 259, 210 P. 693 (a pre-code case).
In Garden City Production Credit Ass'n v. Lannan, 186 Neb. 668, 186 N.W.2d 99, the court found a security interest in both livestock and the proceeds of sale, although it appears that the determination was based on the use of the term "proceeds" in the financing statement as well as on § 9-306(2) of the Uniform Commercial Code as enacted in Nebraska. The court there gave a convincing explanation of the way § 9-306(2) should be applied in farm credit financing cases:
"We must assume that section 9-306(2), U.C.C., was drafted with an awareness of the practical realities of farm credit financing, the market movement of chattel property, and the practical problems of a simultaneous sale and payment. This provision of the code must clearly have been designed to accommodate and to fit the practical realities of financing a farming and business operation contemplating the raising, feeding, and processing, and sale of livestock and tangible chattel property."
We find the same reasoning persuasive regarding dairy credit financing.
Although the Association could have taken other steps to secure its loans (see e. g., 1B Bender, supra, § 27.04[2]), nevertheless its failure so to do does not defeat its claims to a security interest in the proceeds of the sale of secured items.

THE CROSS-APPEAL
The basis of the Association's cross-appeal is that the court erroneously credited the Carrolls with certain funds from milk produced in 1968. However, this issue was not presented to the court in the Association's motion to alter and amend. Rather that motion sought to have these funds applied to the judgment in a supplemental proceeding. Thus, since the *99 motion to alter and amend did not afford the trial court an "intelligent last look, at the controversy still before it," the contention cannot be considered on appeal. Martin v. Opdyke Agency, Inc., 156 Colo. 316, 398 P.2d 971.
The Association's contention that the funds in question should have been awarded to it under C.R.C.P. 69(f) is without merit. These funds may be subject to valid claims of other creditors, the priority of which must be established in an appropriate proceeding. See Hudson v. American Founders Life Insurance Co., 160 Colo. 420, 417 P.2d 772; and Denver Joint Stock Land Bank v. Moore, 93 Colo. 151, 25 P.2d 180.
Judgment affirmed.
ENOCH and RULAND, JJ., concur.