In re CRITIQUES, INC., d/b/a Decorators Warehouse, Debtor.

MAXL SALES COMPANY, Plaintiff,

v.

CRITIQUES, INC., d/b/a Decorators Warehouse, and Eric C. Rajala, Trustee, Defendants.

Bankruptcy No. 82–20856.
Adv. No. 82–0274.

United States Bankruptcy Court, D. Kansas.

May 18, 1983.

942

Allen J. Lebovitz, Kansas City, Mo., Mark R. Singer, Overland Park, Kan., for debtor/defendant.

Eric C. Rajala, Kansas City, Kan., trustee/defendant.

Mark W. McKinzie, Overland Park, Kan., for plaintiff.

MEMORANDUM OPINION AND ORDER

BENJAMIN E. FRANKLIN, Bankruptcy Judge.

This matter came on for trial on April 11, 1983, upon a Complaint for Reclamation. Plaintiff, Maxl Sales Company, appeared by counsel, Mark W. McKinzie of Wallace, Saunders, Austin, Brown & Enochs, Chartered. Debtor/defendant, Critiques, Inc., appeared by counsel, Allen J. Lebovitz, and local counsel, Mark R. Singer. Trustee/defendant, Eric C. Rajala, appeared pro se and as attorney for the trustee.

Maxl seeks to reclaim cash generated by a state court receiver's sale of inventory in which Maxl alleges it has a security interest and inventory that Maxl consigned to the debtor. The trustee claims a superior interest in such cash proceeds because Maxl's interest is allegedly unperfected; and that Maxl is thus not entitled to reclamation.

### FINDINGS OF FACT

Based on the exhibits, testimony, pleadings and taking judicial notice of the file of International Home Design, Bankruptcy No. 81–03125–1 (Western District of Missouri), the Court finds as follows:

1. That this Court has jurisdiction of the parties and subject matter pursuant to Rule 42 of the United States District Court, District of Kansas; and that venue is proper.

2. That the debtor is a Kansas corporation that filed a Chapter 7 petition in this Court on September 7, 1982.

3. That on October 15, 1980, the debtor and Maxl entered into a consignment agreement that called for Maxl to consign goods to the debtor, with Maxl retaining title in said goods until sold. On September 18, 1981, the debtor signed a security agreement in the amount of $55,068.12 which listed as collateral: proceeds, accounts receivable and intangibles arising from the consignment agreement. On September 22, 1981, Maxl caused a UCC–1 financing statement to be filed with the Kansas Secretary of State. It described the collateral as proceeds, accounts receivable and intangibles arising from the consignment agreement.

The proceeds box was checked. By Maxl's calculations, the principal balance due and owing is $43,844.80.

4. That on August 31, 1981, the debtor executed a $12,000.00 note and security agreement to Maxl for due consideration. The security agreement listed inventory, furniture, fixtures, equipment, accounts receivable, intangibles and any proceeds thereof as collateral. On September 2, 1981, Maxl caused a UCC–1 financing statement to be filed with the Kansas Secretary of State. It described the collateral as inventory, furniture, fixtures, equipment, accounts receivable and intangibles. It did not list proceeds and the proceeds box was not checked. At trial, the debtor introduced a number of checks proving that it had paid $7,392.34, leaving a principal balance due of $4,607.66.

5. That while the debtor was still actively engaged in business it released most of the consigned goods to Sales Promotions, Inc., at the request of Mark Wax, who was president of Maxl and a principal in Sales Promotions. Sales Promotions consigned the same goods to International Home Designs (IHD). When IHD went bankrupt, Maxl filed a $27,586.51 Proof of Claim therein, attaching a copy of the consignment agreement between Maxl and the debtor.

6. That the debtor ceased doing business on or about November 14, 1981. On November 23, 1981: Maxl filed a foreclosure petition against the debtor; the State of Kansas filed a consumer protection complaint against the debtor; and the Hon. Herbert Walton, Judge of the District Court of Johnson County, Kansas, issued a Writ of Attachment against the debtor's property.

7. That on December 14, 1981, Judge Walton appointed a receiver to operate the debtor and hold in trust any net revenue from said operation. The receiver took possession of the debtor's premises on January 1, 1982. He did not discover, collect nor liquidate any accounts receivable or intangible assets of the debtor. He did liquidate

all of the debtor's inventory in a public sale. Gross sales were $130,992.55; expenses were $86,739.77; so the net revenue from the sale was $44,252.78 or about 33% of the gross sales. The receiver sold all of the debtor's existing inventory plus inventory that he had purchased, on credit, specifically for the public sale. It is undisputed that Maxl has no security interest in the inventory specially purchased for the sale.

8. That the receiver was not instructed to segregate the proceeds from the sale so he commingled the proceeds of preexisting inventory and specially purchased inventory into one bank account.

9. That Maxl was able to trace $119,790.99 of the $130,992.55 in gross proceeds of the sale. Maxl determined that the gross proceeds comprised the following: $66,675.25 in pre-existing inventory; $8,250.00 in pre-existing consignment inventory; $31,235.00 in specially purchased inventory; $2,400.00 in combination sales of pre-existing inventory and specially purchased inventory; and $5,821.00 in inventory whose source was indeterminable.

10. That Maxl offered no evidence regarding the amount of cash proceeds received by the debtor within ten days before the bankruptcy petition was filed.

## CONCLUSIONS OF LAW

### I. THE $12,000.00 NOTE

Maxl and the trustee are at odds over who has priority to the proceeds of Maxl's collateral securing the $12,000.00 note. Maxl contends that it has priority by virtue of a perfected security interest in said proceeds, and that it is therefore entitled to reclamation. The trustee contends that Maxl's interest is unperfected and that his interest is therefore superior by virtue of the "strong arm clause" in 11 U.S.C. § 544.

The perfection of security interests in proceeds is governed by the Uniform Commercial Code, at K.S.A. 84–9–306 [1], which states in pertinent part, as follows:

"84–9–306. "Proceeds"; secured party's rights on disposition of collateral.

(1) 'Proceeds' includes whatever is received upon the sale, exchange, collection or other disposition of collateral or proceeds. Insurance payable by reason of loss or damage to the collateral is proceeds, except to the extent that it is payable to a person other than a party to the security agreement. Money, checks, deposit accounts, and the like are 'cash proceeds.' All other proceeds are 'non-cash proceeds.'

(2) Except where this article otherwise provides, a security interest continues in collateral notwithstanding sale, exchange or other disposition thereof unless the disposition was authorized by the secured party in the security agreement or otherwise, and also continues in any identifiable proceeds including collections received by the debtor.

(3) The security interest in proceeds is a continuously perfected security interest if the interest in the original collateral was perfected but it ceases to be a perfected security interest and becomes unperfected ten (10) days after receipt of the proceeds by the debtor unless

(a) a filed financing statement covers the original collateral and the proceeds are collateral in which a security interest may be perfected by filing in the office or offices where the financing statement has been filed and, if the proceeds are acquired with cash proceeds, the description of collateral in the financing statement indicates the types of property constituting the proceeds; or

(b) a filed financing statement covers the original collateral and the proceeds are identifiable cash proceeds; or

(c) the security interest in the proceeds is perfected before the expiration of the ten-day period.

Except as provided in this section, a security interest in proceeds can be perfected only by the methods or under the circumstances permitted in this article for original collateral of the same type."

---

**1.** Maxl's argument that K.S.A. 84–9–504 is the pertinent provision is wholly without merit.

That section governs a secured party's right to dispose of collateral after default.

Although Maxl's financing statement omitted proceeds, its security interest in inventory continued in identifiable proceeds of such inventory. Moreover, Maxl's perfected security interest in inventory triggered an automatic perfection of the proceeds of such inventory for ten days after the debtor received the proceeds, pursuant to K.S.A. 84–9–306(3). After ten days the perfection of such proceeds lapsed unless Maxl complied with one of the subsections of § 84–9–306(3). Here Maxl sufficiently demonstrated that it could trace the cash proceeds and identify how much of the gross proceeds were attributable to its security interest under the $12,000.00 note. Thus, Maxl complied with K.S.A. 84–9–306(3)(b) and its security interest in the proceeds was duly perfected.

However, when the debtor is involved in an insolvency proceeding, a creditor's perfected security interest in proceeds is limited by K.S.A. 84–9–306(4), which states:

"(4) In the event of insolvency proceedings instituted by or against a·debtor, a secured party with a perfected security interest in proceeds has a perfected security interest only in the following proceeds:

(a) in identifiable noncash proceeds and in separate deposit accounts containing only proceeds;

(b) in identifiable cash proceeds in the form of money which is neither commingled with other money nor deposited in a deposit account prior to the insolvency proceedings;

(c) in identifiable cash proceeds in the form of checks and the like which are not deposited in a deposit account prior to the insolvency proceedings; and

(d) in all cash and deposit accounts of the debtor, in which proceeds have been commingled with other funds, but the perfected security interest under this paragraph (d) is (i) subject to any right of setoff; and (ii) limited to an amount not greater than the amount of any cash proceeds received by the debtor within ten (10) days before the institution of the insolvency proceedings less the sum of (I)

the payments to the secured party on account of cash proceeds received by the debtor during such period and (II) the cash proceeds received by the debtor during such period to which the secured party is entitled under paragraphs (a) through (c) of this subsection (4)."

Here the filing of the bankruptcy petition constituted an "insolvency proceeding" within the meaning of K.S.A. 84–9–306(4). Insolvency proceeding is defined in § 84–1–201(22) as follows:

"Insolvency proceedings includes any assignment for the benefit of creditors or other proceedings intended to liquidate or rehabilitate the estate of the person involved."

Thus, § 84–9–306(4) applies to limit Maxl's perfected security interest in proceeds.

Specifically, § 84–9–306(4)(c) and (d) apply herein because Maxl had a perfected security interest in identifiable cash proceeds that were commingled with other cash and deposited in a bank account by the receiver, prior to the filing of the bankruptcy petition. K.S.A. 84–9–306(4)(c) and (d) eliminate a secured party's rights in identifiable but commingled cash proceeds except to the extent that the debtor received any cash proceeds within ten days before the institution of the insolvency proceedings. *Matter of Guaranteed Muffler Supply Co., Inc.,* 1 B.R. 324, 329, 29 UCCRS 285 (Bkrtcy. N.D.Ga.1979). The secured party's right to claim or trace identifiable cash proceeds pursuant to § 84–9–306(3) does not survive in the event of insolvency proceedings and when such identifiable cash proceeds have been commingled with other money or deposited in a bank account. *In re Gibson,* 6 UCCRS 1193, 1195 (USDC W.D.Okl.1969, Ref. Kline); *In re Conklin's,* 14 B.R. 318, 320, 32 UCCRS 1002 (Bkrtcy.D.S.C.1981); *In re Cooper,* 28 UCCRS 176, 185 (S.D.Tex. 1980). Also see *In re Gibson Products of Arizona,* 543 F.2d 652, 655 (9th Cir.1976), cert. den. 430 U.S. 946, 97 S.Ct. 1583, 51 L.Ed.2d 794 (1977) where the court, citing 2 G. Gilmore, Security Interests in Personal Property, ¶ 45.9 at 1340 (1965), stated:

"... The intent was to eliminate the expense and nuisance of tracing when funds are commingled and to limit the grasp of secured creditors to the amount received during the last ten days before insolvency proceedings, which, the draftsmen assumed, would usually be less than the same creditor could trace if he had a grip on the entire balance deposited over an unlimited time."

Here the debtor ceased doing business on November 14, 1981, and the receiver completed all sales by June 8, 1982. The bankruptcy petition was filed on September 7, 1982. Clearly no cash proceeds were received by the debtor or the receiver within ten days before September 7th. Moreover, even if the December 14, 1981 appointment of the receiver could be construed as an "insolvency proceeding" there is no evidence that any cash proceeds were received by the debtor within the 10-day period before the appointment of the receiver. In fact, the debtor ceased doing business a full month before the receiver was appointed.

■ The Court therefore finds that Maxl's perfected security interest in the proceeds was virtually eliminated pursuant to K.S.A. 84–9–306(4) because of the debtor's bankruptcy and because the receiver, in good faith, commingled Maxl's cash proceeds with all other cash proceeds. Maxl's interest is therefore inferior to the trustee's interest as an ideal lien creditor under 11 U.S.C. § 544 and Maxl is not entitled to reclaim the proceeds of the inventory securing the $12,000.00 note.

## II. THE CONSIGNMENT AGREEMENT

Maxl and the trustee are also at odds over who has priority to the proceeds of the consignment inventory securing the consignment agreement. Maxl contends that it has priority by virtue of a perfected security interest in the proceeds; and the trustee contends that Maxl's interest is unperfected.

■ The perfection of proceeds is governed by K.S.A. 84–9–306(3) as cited and discussed infra. Under that section, a perfected security interest in the original collateral triggers an automatic perfection of the proceeds of the original collateral for ten days after the debtor receives said proceeds. Here Maxl's security agreement and financing statement describe only three types of collateral: accounts receivable, intangibles, and proceeds. Inventory is not included in either the security agreement or financing statement. Thus, Maxl has no perfected security interest in the consignment inventory.

■ Absent a perfected security interest in the consignment inventory, Maxl could not have a perfected security interest in the proceeds of that inventory because K.S.A. 84–9–306(3) requires that the *original collateral* be perfected, or that the proceeds be perfected within the 10-day period; and Maxl did not perfect the proceeds by possession, which is the only way a security interest in cash can be perfected, pursuant to § 9–304(1).

Thus, the only proceeds that Maxl could possibly have a perfected security interest in are proceeds of accounts receivable or intangibles, which original collateral Maxl did perfect its interest in. The receiver, however, did not discover, collect nor liquidate any accounts receivable or intangibles so there are no such proceeds. Maxl is therefore, not entitled to reclaim any proceeds of the consignment agreement.

IT IS THEREFORE, BY THE COURT, ORDERED That Maxl's Complaint for Reclamation be and the same is hereby DENIED.