In re JOHN DESKINS PIC PAC, INC., d/b/a IGA Foodliner, Debtor.

JOHN DESKINS PIC PAC, INC., Plaintiff,

v.

FLAT TOP NATIONAL BANK, et al., Defendants.

Bankruptcy No. 7–84–01011–A.
Adv. No. 7–85–0109.

United States Bankruptcy Court,
W.D. Virginia,
Abingdon Division.

April 16, 1986.

---

Copeland, Molinary & Bieger, Abingdon, Va., for debtor/plaintiff.

Woodward, Miles & Flannagan, Bristol, Va., for Flat Top Nat'l Bank.

White, Elliott & Bundy, Bristol, Va., for James W. Thompson.

C.R. Bolling, Richlands, Va., for Mullins, Inc.

Robert E. Wick, Jr., Bristol, Va., Trustee.

## MEMORANDUM OPINION AND ORDER

H. CLYDE PEARSON, Bankruptcy Judge.

The issue before the Court is the appropriate distribution of approximately $27,-000.00 in proceeds from sale of inventory. Resolution of this issue requires a determination of (1) whether the Defendant, Flat Top National Bank ("FTNB"), has a perfected security interest in the inventory proceeds, (2) whether Mullins, Inc. has a claim for rent which is superior to FTNB's security interest, and (3) whether J.R. Thompson is entitled to repayment of monies advanced to the Debtor.

The relevant facts are as follows. The Debtor, John Deskins Pic-Pac, Inc., entered into an agreement with J.R. Mullins of Mullins, Inc. to lease premises at a shopping mall in Richlands, Virginia to operate a supermarket. The lease provided for a term of ten years and monthly rental payments of $7,000.00.

On February 7, 1983, prior to occupancy of the premises, John and Barbara Deskins obtained a loan of $698,000.00 from FTNB to finance acquisition of inventory and equipment for the supermarket. As security for the loan, the Debtor, through its President, John Deskins, executed a security agreement granting FTNB a security interest in the equipment and inventory then owned or after-acquired. A financing statement covering equipment was filed in February, 1983 prior to said equipment being placed on the premises. Financing statements covering inventory were filed in

the office of the Clerk of the Circuit Court of Tazewell County on August 5, 1983 and with the State Corporation Commission on August 8, 1983. Testimony of a Vice-President of FTNB indicated that the financing statements were not filed sooner due to an oversight of the attorney who previously handled the matter. The Debtor indicated that approximately $200,000.00 of the loan money was used to acquire inventory.

The Debtor filed its Chapter 11 petition with the Court on October 5, 1984. The schedules accompanying the petition showed inventory at a value of $106,732.84. The Debtor continued sale of the inventory at retail, but failed to place the proceeds in a separate Debtor-in-Possession account. In November, 1984, the business inventory was valued at approximately $80,000.00 and, when sold at a discount of 60%, produced $19,106.65 in proceeds.

On May 20, 1985, this adversary proceeding was commenced by the Debtor to determine the secured status of FTNB in the inventory and equipment. In June, 1985, the Debtor defaulted in payment of monthly rent, and continued in default thereafter.

On November 1, 1985, the Debtor entered into a contract to sell all of its inventory on or before November 15, 1985 to James W. Thompson. An addendum to the agreement provided that if the sale did not close by that date, all monies advanced would be returned. In contemplation of the proposed sale, the Debtor testified at hearing that he gave Thompson $4,000.00, to which Thompson added the sum of $5,426.84 and obtained a Cashier's check for $9,426.84 for purchase of inventory from Virginia Foods, a grocery wholesaler. The proposed sale of the business to Thompson subsequently fell through.

On or about November 22, 1985, the Debtor ceased doing business, and the case was converted to a case under Chapter 7 on November 25, 1985. Robert E. Wick, Jr. was appointed as Trustee and made a party-plaintiff to this adversary proceeding. By Order of this Court dated December 12, 1985, the Trustee was permitted to conduct the sale of the remaining inventory at 42%

of its retail price. Such liquidation yielded $8,024.15. This amount and the $19,106.65 from the previous discount sale of inventory comprise the $27,000.00 held by the Trustee for distribution. The Trustee continued in possession of the premises until December 24, 1985. The store equipment remains in the rented premises and FTNB is currently paying Mullins, Inc. $4,000.00 a month for storage.

The matter was set for further hearing on March 24, 1986 to determine the entitlement to the proceeds from sale of the inventory. Thompson, by Counsel, filed a Motion to Intervene, asserting a right to $5,426.84 of the proceeds as an administrative expense for the monies advanced. Mullins, Inc. also moved to intervene, asserting a landlord's lien for unpaid rent. Claims filed by Mullins indicate rent during the Chapter 11 proceeding of $37,221.42, and during the Chapter 7 proceeding of $7,000.00. An Order of this Court entered September 17, 1985 established rental obligations as an administrative expense. The Court permitted intervention of these parties over objection of Debtor's Counsel, and the matter was taken under advisement for determination.

We turn first to a consideration of the claim of James Thompson. As noted previously, Thompson advanced the Debtor the sum of $5,426.84 in contemplation of purchase of the business, said amount remaining unpaid. At hearing, Counsel for Thompson indicated that no security agreements or financing statements were executed with respect to the money advanced.

11 U.S.C. § 364 provides for obtaining of credit, and states in relevant part:

"(a) If the Trustee is authorized to operate the business of the debtor under Section 721, 1108, or 1304 of this Title, unless the court orders otherwise, the Trustee may obtain unsecured credit and incur unsecured debt in the ordinary course of business allowable under Section 503(b)(1) of this Title as an administrative expense.

(b) The court, after notice and a hearing, may authorize the Trustee to obtain

unsecured credit or to incur unsecured debt other than under subsection (a) of this Section, allowable under Section 503(b)(1) of this Title as an administrative expense."

In a case under Chapter 11, unless a Trustee has been appointed pursuant to 11 U.S.C. § 1107(a), the Debtor-in-Possession will have the rights and powers of a Trustee. Thus, where § 364 refers to actions by the Trustee, it is also applicable to the Debtor-in-Possession. 2 *Collier on Bankruptcy,* ¶ 364.02 at 364–5–6 (15th Ed.1985). Section 364(a) allows the Trustee or Debtor-in-Possession to incur debt in the ordinary course of business and grants the person who extends such credit administrative expense priority status under § 503(b)(1). If the Trustee or Debtor-in-Possession seeks to incur unsecured credit outside the ordinary course of business, under § 364(b), such action must be approved by the court in order to give the person extending the credit administrative expense status.

[1] The extension of money by Thompson was not made in the ordinary course of business, but was done in contemplation of the purchase of the business. Accordingly, it does not fall within the provisions of § 364(a). Neither the Debtor nor Thompson, who was fully aware of the then-pending Chapter 11 proceeding, sought Court approval of the sale of the business or the advance of the money to purchase inventory. Thus, under the provisions of § 364(b), Thompson is not entitled to administrative expense status. Where borrowing is out of the ordinary course of business and prior court authorization is not obtained, the lender, as in this case, faces relegation to the status of a general unsecured creditor. *See* 2 *Collier on Bankruptcy, supra,* at 364–8.

We now consider whether FTNB is a secured creditor with respect to the inventory proceeds. *Virginia Code* § 8.9–306 governs proceeds, and provides for a secured party's right to proceeds on disposition of collateral. In relevant part, *Virginia Code* § 8.9–306 provides:

"(1) 'Proceeds' includes whatever is received upon the sale, exchange, collection or other disposition of collateral or proceeds, except to the extent that it is payable to a person other than a party to the security agreement. Money, checks, deposit accounts, and the like are 'cash proceeds'. All other proceeds are 'non-cash proceeds'.

(2) Except where this title otherwise provides, a security interest continues in collateral notwithstanding sale, exchange, or other disposition thereof unless the disposition was authorized by the secured party in the security agreement or otherwise, and also continues in any identifiable proceeds including collections received by the debtor.

(3) The security interest in proceeds is a continuously perfected security interest if the interest in the original collateral was perfected but it ceases to be a perfected security interest and becomes unperfected twenty days after receipt of the proceeds by the debtor unless

(a) a filed financing statement covers the original collateral and the proceeds are collateral in which a security interest may be perfected by filing in the office or offices where the financing statement has been filed and, if the proceeds are acquired with cash proceeds the description of collateral in the financing statement indicates the types of property constituting the proceeds; or

(b) a filed financing statement covers the original collateral and the proceeds are identifiable cash proceeds; or

(c) the security interest in the proceeds is perfected before the expiration of the twenty-day period. Except as provided in this section, a security interest in proceeds can be perfected only by the methods or under the circumstances permitted in this title for original collateral of the same type.

■ As noted previously, the security agreement executed gave FTNB a security interest in all of the Debtor's inventory

then owned or after acquired. FTNB properly filed its financing statements pursuant to *Virginia Code* § 8.9–401 on August 5, 1983 and August 8, 1983. As of that time, FTNB had a perfected security interest in the Debtor's inventory. The funds held by the Trustee are proceeds from sale of the inventory and, under *Virginia Code* § 8.9–306(a), constitute cash proceeds.

At hearing, attention was called to the fact that the financing statements filed by FTNB did not have the proceeds boxes checked, and it is argued that FTNB remains unsecured as to the proceeds. However, under the terms of *Virginia Code* § 8.9–306(2), a security interest continues in collateral notwithstanding sale, and also continues in any identifiable proceeds. *See also, Virginia Code* § 8.9–203(3). As the Official Comment to *Virginia Code* § 8.9–312 indicates, § 9–306 "makes it unnecessary to claim proceeds expressly in a financing statement and provides, in effect, that a filing as to original collateral is also a filing as to proceeds." *See also,* 3B *Michie's Jurisprudence,* Commercial Law, § 99 at 771, § 100 at 787. Failure of the secured party to check the proceeds box on a financing statement has no effect on the continuation of its security interest in proceeds. *See, e.g., In re Critiques, Inc.,* 29 B.R. 941, 945 (Bankr.D.Kan.1983); *Fort Collins Production Credit Association v. Carroll Dairy,* 37 Colo.App. 536, 553 P.2d 95 (1976), 19 U.C.C.Rep. 1390. Under the terms of § 8.9–306(2), a security interest in the original collateral triggers a continued perfection in the identifiable proceeds of the sale of the collateral. *In re Critiques, Inc., supra,* at 946; *In re Southern Prop-*

*erties, Inc.,* 44 B.R. 838 (Bankr.E.D.Va. 1984).

However, this security interest in proceeds ceases to be a perfected security interest and becomes unperfected twenty days after receipt of the proceeds by the debtor unless one of the subsections of *Virginia Code* § 8.9–306(3) is met. Thus, to maintain its secured status, FTNB must come within one of these provisions. *Virginia Code* § 8.9–306(3)(b) is applicable in that a filed financial statement covered the original collateral (the inventory) and the proceeds are identifiable cash proceeds. The uncontroverted testimony indicates that the $19,106.65 turned over to the Trustee upon conversion of this case to a case under Chapter 7 represents proceeds from the discount sale of the inventory during the pendency of the case under Chapter 11. The remaining $8,024.15 similarly represents the amount received from sale of the inventory at a reduced price. Although the *Uniform Commercial Code* does not define "identifiable", we conclude that based on the evidence presented, the origin of the balance held by the Trustee is sufficiently clear such that the sum is within the meaning of "identifiable cash proceeds" under *Virginia Code* § 8.9–306(3)(b). Accordingly, FTNB retains its secured status with respect to the inventory proceeds.

Counsel for Mullins, Inc. contends that even if this Court finds that FTNB has a security interest in the proceeds, the claim of Mullins, Inc. as landlord for unpaid rent has priority over FTNB's asserted claim pursuant to *Virginia Code* § 55–231.[1]

---

1. *Virginia Code:*

§ 55–231. On what goods levied; to what extent goods liable; priorities between landlord and other lienors.—The distress may be levied on any goods of the lessee, or his assignee, or undertenant, found on the premises, or which may have been removed therefrom not more than thirty days. A levy within such thirty days shall have like effect as if the goods levied on had not been removed from the leased premises. *If the goods of such lessee, assignee or undertenant, when carried on the premises, are subject to a lien, which is valid against his creditors, his interest only in such goods shall be*

*liable to such distress. If any lien be created thereon while they are upon the leased premises, or within thirty days thereafter, they shall be liable to distress, but for not more than six months' rent if the premises are in a city or town,* or in any subdivision of suburban and other lands divided into building lots for residential purposes, or of premises anywhere used for residential purposes, and not for farming, or agriculture, and for not more than twelve months' rent if the lands or premises are used for farming or agriculture whether it shall have accrued before or after the creation of the lien. No other goods shall be liable to distress than

The case law indicates that *Virginia Code* § 55–231 and §§ 55–227 and 55–233 give a landlord a lien which is fixed and specific and not one which is merely inchoate. Such lien exists independent of the right of distress or attachment, which are merely remedies for enforcing it. *United States v. Waddill, Holland & Flinn, Inc.*, 182 Va. 351, 28 S.E.2d 741 (1944), *rev'd* on other grounds 323 U.S. 353, 65 S.Ct. 304, 89 L.Ed. 294 (1945); *In re Balistreri*, 8 B.R. 703, 705 (Bankr.E.D.Va. 1981); *United States v. Melchiorre*, 292 F.Supp. 305, 308 (E.D.Va. 1968); *United States v. Lawler*, 201 Va. 686, 112 S.E.2d 921 (1960). When the landlord's lien for rent is obtained, it relates back to the beginning of the tenancy and takes precedence over any lien of any other person obtained or created upon goods or chattels on the leased premises after the commencement of the tenancy. *American Exchange Bank v. Goodlee Realty Corp.*, 135 Va. 204, 116 S.E. 505 (1923); *In re Balistreri, supra.* Thus, Mullins contends that since FTNB's security interest in the inventory was not perfected until the filing of the financing statements in August, after the goods were on the premises and after commencement of the tenancy, the lien under *Virginia Code* § 55–231 has priority.

■ We cannot accept this position. As the court noted in *Melchiorre, supra,* at 308, "a state court's characterization of a lien as specific and perfected, however conclusive as a matter of state law, cannot operate by itself to impair or supersede a ... Congressional declaration of priority." (Citations omitted) We cannot ignore the provisions of 11 U.S.C. § 545, which provide in relevant part:

"The Trustee may avoid the fixing of a statutory lien on property of the debtor to the extent that such lien—...

(3) is for rent; or

(4) is a lien of distress for rent."

Subsections (3) and (4) are derived from Section 67c(1)(C) of *The Bankruptcy Act of 1898,* as amended, and wholly invalidate statutory liens for rent and liens of distress for rent. In that the landlord may have a lien pursuant to *Virginia Code* § 55–231, the Trustee may use his powers to avoid that lien. The Trustee in this case has not formally sought to avoid the lien. However, neither the Trustee nor any other party had notice that the landlord intended to assert any such lien until Counsel appeared at hearing and moved to intervene. Nevertheless, as a party to this adversary proceeding, both at hearing and in its subsequent consideration, the Trustee has in effect sought to avoid the landlord's claim by advocating that, as a secured creditor, FTNB is entitled to the proceeds. Accordingly, in light of § 545(3), we hold that the lien is avoided.

■ This decision, however, does not totally preclude Mullins, Inc. from recovery. 11 U.S.C. § 506(c) provides:

"The Trustee may recover from property securing an allowed secured claim the reasonable, necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit to the holder of such claim."

The Chapter 7 Trustee occupied the leased premises from November 22 through December 24, 1985. During that time, the Trustee sold the remaining inventory, producing approximately $8,000.00 in proceeds. The rental expenses for this period are a necessary cost of disposing of the collateral which benefited FTNB. In the absence of evidence to the contrary, the monthly rental payment is presumed to be reasonable. Therefore, we conclude that a monthly rental of $7,000.00 may be charged against the proceeds received from the final liquidation.

Accordingly, it is

**ADJUDGED** and **ORDERED**

that the motions of James W. Thompson and Mullins, Inc. to intervene in this adversary proceeding are hereby granted *nunc*

---

such as are declared to be so liable in this section, nor shall the goods of the undertenant be liable to a greater amount than such under-

tenant owed the tenant at the time the distress was levied." (emphasis added)

*pro tunc* to March 24, 1986. For the reasons expressed herein, we conclude that FTNB holds a perfected security interest in the proceeds from sale of the inventory. The Trustee is directed to distribute the funds to FTNB, less the sum of $7,000.00 reasonable rental which is to be paid to Mullins, Inc. and less the Trustee's commissions and expenses.

Service of a copy of this Memorandum Opinion and Order shall be made by mail to the Debtor/Plaintiff; to COPELAND, MOLINARY & BIEGER, Counsel for Debtor; WOODWARD, MILES & FLANNAGAN, Counsel for FTNB; C.R. Bolling, Esquire, Counsel for Mullins, Inc.; WHITE, ELLIOTT & BUNDY, Counsel for James W. Thompson; and to Robert E. Wick, Jr., Esquire, Trustee.