The PEOPLE of the State of Colorado,
Plaintiff–Appellee,

v.

Teresa TIPTON, Defendant–Appellant.

No. 97CA1173.

Colorado Court of Appeals,
Division II.

Sept. 17, 1998.

Rehearing Denied Dec. 17, 1998.

Certiorari Denied April 12, 1999.

Gale A. Norton, Attorney General, Martha Phillips Allbright, Chief Deputy Attorney General, Richard A. Westfall, Solicitor General, Katherine A. Hansen, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee

Roman, Benezra, & Culver, L.L.C., Seth J. Benezra, Gilbert M. Roman, Lakewood, Colorado, for Defendant–Appellant

Opinion by Judge CRISWELL.

Defendant, Teresa Tipton, appeals from the district court's order requiring certain funds taken from her at the time of her arrest to be applied to the payment of restitution and costs. We affirm.

At the time of her arrest for an incident upon which charges of assault, forgery, criminal impersonation, and attempted theft were later filed, defendant was in possession of some $1,180 in cash. This sum was taken from her, and it remained in the custody of the Aurora Police Department until the occurrence of events which led to the court's order that is the subject of this appeal.

The initial charges were dismissed pursuant to a plea agreement, and defendant entered a plea of guilty to attempting to commit a first degree assault. However, she failed to appear for her scheduled sentencing because she had gone to another state where she had been incarcerated. Consequently, the People commenced proceedings to have defendant extradited.

Upon defendant's return to Colorado, the court, in July 1996, sentenced her to serve six years in community corrections. As a part of that sentence, the court ordered her to pay $125 to the victim as restitution and $2,238 to the Arapahoe County Sheriff's Department. Although the latter payment was described on the mittimus as "restitution," the sum ordered to be paid was to reimburse the sheriff's office for the costs incurred in the extradition proceedings. Defendant did not appeal from or otherwise contest the court's orders requiring these payments.

In December 1996, defendant violated certain rules of the community corrections facility. As a result, on February 26, 1997, she was re-sentenced to the Department of Corrections for a term of six years, less the time previously served in community corrections. The mittimus specifying this sentence refers only to "$2,238 restitution," without identifying the recipient and without reference to the previous order requiring payment of an additional $125 to the victim.

Shortly thereafter, defendant filed a motion requesting return of the $1,180 in cash initially taken from her. Simultaneously, she filed a motion pursuant to Crim. P. 35(b) requesting the court to reconsider the sentence imposed by it. In response, the People requested that the funds being held by Aurora be applied to the obligations created by the court's previous orders respecting restitution.

The court initially ordered Aurora to deposit the cash being held by it with the clerk of the court. See C.R.C.P. 67(b) (court may order person holding money belonging to party to litigation, which is subject of suit, to deposit the same with the clerk, subject to further direction of the court). It also directed the sheriff either to show cause why the funds should not be returned to defendant or to file a writ of garnishment or a writ of attachment by a specified date.

Aurora complied with the order to deposit the funds with the court. Likewise, referring to C.R.C.P. 67, the sheriff requested that the court order that the funds be paid over to him to satisfy, in part, the order requiring defendant to pay the sheriff the costs of extradition.

After hearing argument by the parties upon the issue, the court amended its previous mittimi and judgments to reflect that the amount ordered to be paid to the sheriff was entered pursuant to §16–11–501(1), C.R.S. 1998, to reimburse him for costs and that the sum of $125.36 was to be paid to the victim as restitution. It then directed that the victim be paid this latter sum from the amount on deposit with the clerk and that the remaining sum of $1,054,64 be paid to the sheriff as partial reimbursement of prosecution costs. In ordering this disposition of the funds, the court impliedly, but necessarily, denied defendant's motion to have those funds returned to her.

Relying upon *People v. Strock*, 931 P.2d 538 (Colo.App.1996), defendant argues that, under the pertinent statute, it is only the parole board, and not the trial court, that has authority to direct the manner and time for the payment of restitution and costs. While the Attorney General concedes that the court had no authority to enter its order, we conclude that such concession is not justified, and we reject it. *See People v. Backus*, 952 P.2d 846 (Colo.App.1998) (appellate court is not bound by parties' concessions as to applicable law). Rather, we conclude that the trial court's order was properly entered.

It is true that the *Strock* opinion may be read as determining that, with respect to restitution, a court's authority extends no further than to "fix" the amount and that there is no judicial authority to order its payment. The statute considered in *Strock*, however, specifically required the court only to "fix" the amount of restitution. Hence, the division there concluded that: "This statute does not authorize the court to *order* or *impose* restitution." *People v. Strock, supra*, 931 P.2d at 539 (emphasis supplied).

Prior to defendant's sentencing here, the General Assembly amended the statute considered in *Strock, see* Colo. Sess. Laws 1996, ch. 288, §16–11–102(4) at 1778, so that the court is now required to "impose" restitution in an amount "equal to the full pecuniary loss caused by the defendant."

Further, the *Strock* opinion dealt only with the subject of restitution. It did not address the question of costs.

Finally, there is no reference in *Strock* to several other statutes that address the manner in which the person or persons, who are the beneficiaries of a criminal court's order respecting restitution or costs, may collect the same.

■ Our consideration of the statutory amendment, in conjunction with the other statutes addressing the method to be used to collect restitution or costs imposed by the sentencing court, convinces us that, unlike the conclusion reached in *Strock*, an order directing payment of funds held by the court or by some third party is now authorized. Hence, we conclude that the court's order here was proper.

As noted, §16–11–102(4), C.R.S.1998, presently requires that, at the time of sentencing, a court must "impose" restitution. This is mandatory. *See People v. Johnson*, 780 P.2d 504 (Colo.1989).

Moreover, any "order of restitution to be paid by a person . . . sentenced for a crime . . . shall be a final judgment in favor of the state" or other proper party. "Such a judgment may be enforced by any of the parties in whose favor the judgment was entered in the same manner as a judgment in a civil action." Section 16–11–101.5, C.R.S.1998.

Likewise, §16–11–501(1), C.R.S.1998, requires that, upon conviction of an offender, "the court *shall* give *judgment*" in favor of one or more proper parties for "costs of prosecution," as well as for "any fine imposed." (emphasis supplied) Collection of these judgments is also to be "in the same manner as are civil judgments."

■ These provisions appear clear on their face. At the time of sentencing, the sentencing court must determine the proper amount of restitution and costs and must "impose" an order of restitution and must enter a "judgment" for costs. The amounts of the restitution order and of the cost judgment may be collected in the same manner as are civil judgments.

■ It is true, of course, that courts have no authority to require payment of restitution as a condition of parole; this is the

exclusive function of the parole board. *People v. Lemons,* 824 P.2d 56 (Colo.App.1991). Likewise, in the case of a sentence to community corrections, the establishment of a restitution payment schedule is the responsibility of the contracting parties; the courts have no authority over this matter. *People v. Randolph,* 852 P.2d 1282 (Colo.App.1992).

However, making the payment of restitution or costs a *condition* of parole or of a sentence to community corrections may implicate far different considerations for a sentenced offender than merely treating the court order respecting restitution or costs as a civil judgment. Revocation of parole or rejection of a continuing sentence to community corrections may result from a failure to comply with proper conditions attached to either status. Only execution upon non-exempt property may result from efforts to collect a civil judgment. Hence, the judiciary's lack of authority in the former spheres does not require the conclusion that it lacks authority over all means of enforcing the offender's obligations.

■ Defendant appears to recognize the intent of the foregoing provisions, but she seems to suggest that §16–11–101.6, C.R.S. 1998, makes those provisions inapplicable to offenders who are incarcerated in state facilities. We disagree.

Section 16–11–101.6(5) provides that:

During any period of time that a defendant is a state prisoner . . . the superintendent of the facility to which such defendant is assigned . . . *may* fix the manner and time of payment of restitution, fines, and fees and *may* direct that a portion of the *wages* of such defendant under section 17–24–122(3), C.R.S., or *compensation* under section 17–24–114, C.R.S., be applied to any unpaid restitution, fines, or fees. (emphasis supplied)

The two statutes referred to, §§17–24–114 and 17–24–122(3), C.R.S.1998, authorize the director of the division of correctional industries to assign an offender to a particular work task, or to work for a private employer pursuant to a contract therefor, and to establish compensation rates for the offender for such work. A portion of the offender's compensation may be used to defray costs of his or her maintenance and of the operation of the programs, and a portion is to be credited to the prisoner's personal account.

It could reasonably be argued that the sole intent and purpose of §16–11–101.6 is to authorize the confining authority to devote an additional portion of the compensation that a confined prisoner earns to the payment of the previously entered judgments. Indeed, defendant does not suggest that this statute grants the superintendent jurisdiction over the property of a prisoner that is not in the superintendent's custody. Thus construed, that statute would grant to the superintendent the authority only to make further deductions from an inmate's compensation that are not authorized to be made by any other statute.

Further, to interpret the statute as vesting exclusive authority in the superintendent over the collection of costs and restitution would lead to an anomalous result. It would mean that the private property of an offender would be immune from the civil collection process if the offender's action were so egregious as to require his or her incarceration, but the property of an offender committing acts not requiring incarceration would be fully subject to that process.

Nevertheless, however §16–11–101.6 is to be interpreted, the authority granted to the superintendent is manifestly discretionary (the superintendent "may" act). And, there is no evidence that the superintendent had, as of the date of the trial court's order here, exercised that discretionary authority. Absent the superintendent's action, there is nothing that would indicate that the statute was intended to divest the sentencing court of authority to entertain otherwise proper civil execution requests with respect to property or funds that would not be subject to the superintendent's prospective order.

Further, C.R.C.P. 69(g) provides that the court may order any person over whom the court has jurisdiction to apply any property, except realty, whether in the possession of that person or "owed to the judgment debtor," to the satisfaction of a judgment. Here, the Aurora Police Department had no claim to the cash seized by it; it was owed

to defendant, the judgment debtor. That department did not contest the court's jurisdiction over it, and the trial court had continuing jurisdiction, through ancillary or supplemental proceedings, to enforce the previous judgments entered by it. *See Hudson v. American Founders Life Insurance Co.*, 160 Colo. 420, 417 P.2d 772 (1966) (court has authority under C.R.C.P. 69 to order funds on deposit with court to be paid to judgment debtor); *City of Englewood v. Reffel*, 34 Colo.App. 103, 522 P.2d 1241 (1974) (every court having authority to enter a judgment has the authority to enter orders enforcing it). Hence, if we treat the court's previous orders for payment of restitution and costs as civil judgments, as the pertinent statutes command that we do, the court's order here was expressly authorized by the rules of civil procedure.

 We also reject defendant's assertion that the People here were barred from seeking to have the funds paid to satisfy the court's previous orders because of the doctrine of laches.

Execution may issue upon a civil judgment at any time within 20 years of its rendition, and such a judgment may be "revived" by the court entering that judgment for another 20 years if application for such revival is made within the initial 20-year period. Section 13–52–102, C.R.S.1997; C.R.C.P. 54(h); *see Santarelli v. Santarelli*, 839 P.2d 525 (Colo.App.1992).

Given these provisions, we question whether the doctrine of laches can be pleaded to prevent execution upon an otherwise valid judgment. *See O'Byrne v. Scofield*, 120 Colo. 572, 212 P.2d 867 (1949) (generally, equity, in applying its doctrine of laches, will adopt any relevant statute of limitations as the period during which action must be taken). However, even if we assume that such an argument might be available to a civil judgment debtor, it clearly is inapplicable here.

The initial order requiring payment of restitution and costs was entered on July 31, 1996. The People's request for payment of the funds to satisfy those orders was filed on March 21, 1997, less than eight months later. In addition, defendant has failed to produce any evidence indicating that the passage of this period of time resulted in some prejudice to her.

Given the contents of this record, therefore, we conclude, as a matter of law, that there was no unreasonable delay in asserting the People's right and that any delay as there was resulted in no prejudice to defendant. Hence, the equitable doctrine of laches would, in any event, be inapplicable here. *See O'Byrne v. Scofield, supra* (passage of unreasonable amount of time must result in prejudice or inequity for laches to apply).

Given our conclusion that the trial court properly ordered the funds in controversy to be paid to the victim and to the sheriff, we need not decide whether that court had continuing jurisdiction to order their return to defendant.

The order of the district court is affirmed.

Judge NEY and Judge BRIGGS concur.