The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

Jose APODACA, Defendant–Appellant.

No. 98CA0042.

Colorado Court of Appeals, Div. V.

May 27, 1999.

Rehearing Denied June 24, 1999.

Certiorari Denied April 24, 2000.

Gale A. Norton, Attorney General, Martha Phillips Allbright, Chief Deputy Attorney General, Richard A. Westfall, Solicitor General, Roger G. Billotte, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

James O. Simpson, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge VOGT.

Defendant, Jose Apodaca, appeals the judgment of conviction and order of restitution entered on a jury verdict finding him guilty of third degree assault. We affirm.

Defendant was charged with second degree assault following an altercation in which the victim was stabbed in the stomach. He was convicted of third degree assault and sentenced to two years in the county jail, to be served in the Department of Corrections concurrently with a sentence in another case. The amount of restitution was set at $9,073.52. The court entered the amount on the mittimus and also entered a separate order directing defendant to pay that amount to the clerk of the court within one year of the date of the order.

## I.

Defendant first contends that the trial court erred in refusing to dismiss his public defender and continue the trial so that a private attorney could be retained to represent him. We do not agree.

A few weeks before trial, defendant filed a motion to dismiss the public defender and appoint private counsel. He subsequently withdrew the motion, stating that he and his counsel had worked out their problems.

On the morning of trial, defendant again moved to dismiss the public defender, claiming ineffective assistance of counsel. Defense counsel also filed a motion to withdraw. He cited an irreconcilable conflict that could not be revealed to the court and, as a separate basis for his motion, claimed that defendant was unable to make intelligent decisions regarding his defense because he no longer trusted his counsel.

The court denied both motions. It found that defendant had failed to establish any reason to conclude that defense counsel had

been ineffective and that, in spite of disagreements over trial strategy, defendant was still able to communicate with counsel. The court also denied defendant's request for a continuance to enable his mother to raise money for a private attorney, noting that there was no assurance that private counsel would be found. When presented with the option of proceeding *pro se*, defendant elected to continue representation by the public defender.

Defense counsel then made a sealed record in which he stated that the conflict with his client arose because of defendant's intent to present fabricated testimony. However, at trial, he advised the court that he was no longer concerned about that conflict and was comfortable with presenting defendant's testimony to the jury. The court noted at the time that, based on its observations, it was clear that defendant and his counsel were communicating with each other.

■ A defendant's motion to discharge an attorney, an attorney's motion to withdraw, and a motion for a continuance are generally addressed to the sound discretion of the trial court. The court's ruling on such motions will not be disturbed on review in the absence of a clear abuse of discretion. *People in Interest of M.M.*, 726 P.2d 1108 (Colo. 1986).

■ When an indigent criminal defendant voices objections to court-appointed counsel, the trial court must inquire into the reasons for dissatisfaction. If the defendant establishes good cause, such as a conflict of interest or a complete breakdown of communication, the court must appoint substitute counsel. *People v. Arguello*, 772 P.2d 87 (Colo.1989). Conversely, if the court has a reasonable basis for concluding that the attorney-client relationship has not deteriorated to the point where counsel is unable to give effective assistance, the court is justified in refusing to appoint new counsel. *People v. Schultheis*, 638 P.2d 8 (Colo.1981).

■ In determining whether to appoint substitute counsel, the court may consider the timing of the motion, the inconvenience to witnesses, and the possibility that any new counsel will be confronted with similar diffi-

culties. *People v. Rubanowitz*, 688 P.2d 231 (Colo.1984).

■ If the court determines that substitution is not warranted, it may insist that the defendant choose between continued representation by existing counsel and appearing *pro se*. *People v. Arguello, supra.*

Under these standards, the trial court did not abuse its discretion in declining to dismiss the public defender and appoint substitute counsel to represent defendant.

■ Contrary to defendant's contention, the record does not indicate that there was a complete breakdown of communication between defendant and his counsel. On the contrary, not only did the trial court observe that there had been "considerable and ongoing conversation" between the two during trial, but defense counsel stated at sentencing that he and his client had "worked together as a good team" after getting past their initial differences.

■ Nor was the court required to appoint substitute counsel based on an asserted conflict of interest. Defendant argues on appeal that there was a conflict of interest because of defense counsel's "personal disbelief" of defendant's version of the events following his altercation with the victim. However, this argument is based on statements made by defense counsel at the sentencing hearing, at which he indicated that he had originally not believed his client's story. At the time the motions to withdraw and to dismiss counsel were before the court, no issue was raised regarding defense counsel's asserted disbelief of his client's account of the events. In fact, defendant himself stated at that time that his "conflict" was with the public defender's office, not with his individual counsel.

To the extent the trial court may have inferred, based on counsel's reference at the hearing to *People v. Schultheis, supra*, that counsel was concerned about perjured testimony, the court was correct in observing that such a conflict would be present regardless of whether a different attorney was appointed.

Finally, in determining whether to grant the motions and appoint substitute counsel,

the court was entitled to take into consideration that the motions were made on the morning of trial, that the public defender indicated he was prepared to proceed, and that no private attorney was available at that time to take over the case. *See People v. Rubanowitz, supra.*

## II.

In a related claim, defendant contends that he received ineffective assistance of counsel because his attorney failed to investigate and pursue certain evidentiary problems with the prosecution's case and failed to consult experts or order testing of blood samples. Again, we disagree.

■ Initially, we note that defendant's ineffective assistance claim was raised in the trial court, and addressed by that court, only in connection with his pretrial motion to dismiss his counsel. The trial court has not had the opportunity to consider this claim in proceedings under Crim. P. 35(c). While we may nevertheless address the claim on direct appeal, our review is limited to whether ineffective assistance of counsel is established based on the record before us. *See People v. Thomas,* 867 P.2d 880 (Colo.1994).

In order to establish ineffective assistance of counsel, defendant must prove that defense counsel's performance fell below the range of competence demanded of attorneys in criminal cases, and that the deficient performance prejudiced his case. To establish prejudice, defendant must demonstrate that there is a reasonable probability that, but for counsel's unprofessional errors, the results of the proceeding would have been different. *Davis v. People,* 871 P.2d 769 (Colo.1994).

■ While a defendant is entitled to pretrial investigation sufficient to reveal potential defenses and the facts relevant to guilt or penalty, mere disagreement as to trial strategy will not support a claim of ineffectiveness. Whether to call a particular witness is a tactical decision within the discretion of trial counsel. Further, an attorney's decision not to interview certain witnesses, if made in the exercise of reasonable professional judgment, does not amount to ineffective assistance. *Davis v. People, supra.*

■ At the hearing on defendant's pretrial motion to dismiss his counsel, defense counsel explained his reasons for certain of the decisions which defendant had cited as evidence of ineffective assistance, and stated that he did not believe he had been ineffective. The prosecutor also stated that defense counsel had conducted a thorough investigation, spoken to all of the prosecution witness who were willing to be interviewed, viewed the evidence, and, as demonstrated by the jail records she had obtained, had spent a great deal of time with defendant. The court noted that counsel was experienced and had demonstrated competence in other cases. There was thus ample support for the trial court's conclusion that defendant did not establish at the pretrial hearing that his counsel had been ineffective.

As to the asserted instances of ineffectiveness raised on appeal that were not addressed by the trial court, we likewise conclude that the record does not establish either substandard performance or prejudice.

■ Defendant focuses primarily on counsel's failure to have blood stains tested. However, evidence presented at trial showed that both defendant and the victim were injured in the altercation. Thus, even if testing had shown that certain stains were defendant's blood and not the victim's, defendant has not established that such evidence would likely have changed the outcome of the proceedings.

## III.

We likewise reject defendant's claim that the prosecution violated his due process rights by failing to disclose certain critical evidence in a timely manner.

Crim. P. 16(I)(a)(2) requires that the prosecution disclose to defense counsel any material or information within the prosecution's possession or control which tends to negate the guilt of the accused as to the offense charged or would tend to reduce the punishment therefor.

In order to establish a due process violation for failure to preserve potentially exculpatory evidence, the defendant must establish that the evidence was suppressed or destroyed by the prosecution, that the evidence possessed an exculpatory value that was apparent before it was destroyed, and that the defendant was unable to obtain comparable evidence by other reasonably available means. *People v. Enriquez,* 763 P.2d 1033 (Colo.1988).

Failure to investigate does not constitute suppression of evidence, nor may the defendant compel the state to search out and gather evidence which could be exculpatory. The police do not have a duty to procure all evidence from a crime scene that might be favorable to the defendant. *People v. Moore,* 701 P.2d 1249 (Colo.App.1985). Similarly, the state has no duty to have evidence tested on the speculative basis that it might have some unspecified use for exculpatory purposes. *People v. Roark,* 643 P.2d 756 (Colo.1982).

When dealing with evidentiary material of which no more can be said than it could have been subjected to tests, a failure to preserve the evidence does not constitute a due process violation unless an accused can show bad faith on the part of the police. *People v. Wyman,* 788 P.2d 1278 (Colo.1990).

Defendant has failed to establish any due process violation based on asserted nondisclosure of exculpatory evidence. He has not established that the evidence to which he refers would have been exculpatory, nor has he shown bad faith on the part of the prosecution or the police. Thus, his rights were not violated by the state's failure to gather blood samples and perform tests on them, or by its failure to have an investigator present to take notes when the victim was interviewed. As to the latter claim, we also note that the prosecutor agreed to turn over to defense counsel her own notes of her interview with the victim.

Defendant asserts that a tape recording of a 911 telephone call from the victim's wife "mysteriously disappeared" before trial. However, he does not establish that the recording in fact existed and was then destroyed by the state. Moreover, defense counsel had the opportunity to, and did, cross-examine the victim's wife at trial about her call to the police.

Although defendant alleges that the prosecution failed to examine the alleged assault weapon for fingerprints until a month prior to trial, he does not contend that he was denied access to this evidence or that the state benefited from any delay in examining the weapon. Further, that delay, as well as other deficiencies in the police investigation, was brought out at trial and emphasized by defense counsel in his closing argument. *See People v. Norwood,* 37 Colo.App. 157, 547 P.2d 273 (1975) (no due process violation where state did not benefit from failure to take fingerprints or preserve evidence, and investigatory gaps in prosecution's case were brought out at trial).

### IV.

Defendant also contends that the court was without authority to enter its order directing him to pay restitution. We disagree.

Defendant relies on cases holding that, although a sentencing court may fix the amount of restitution at the time of sentencing pursuant to § 16-11-102(4), C.R.S.1998, it has no authority to order or impose restitution where the defendant is not under some form of conditional release but instead is sentenced to incarceration. *See People v. Young,* 710 P.2d 1140 (Colo.App.1985); *see also People v. Strock,* 931 P.2d 538, 539 (Colo.App.1996) ("[§ 16-11-102(4)] does not authorize the court to order or impose restitution [but] simply directs the court to determine the amount of restitution owing ... and to include that amount in the judgment of conviction endorsed upon the mittimus"); *People v. Randolph,* 852 P.2d 1282 (Colo.App. 1992); *People v. Powell,* 748 P.2d 1355 (Colo. App.1987).

At the time these cases were decided, § 16-11-102(4) stated in part that "the amount of restitution shall be fixed by the court at the time of sentencing." However, in 1996, the General Assembly amended § 16-11-102(4) to state that "the amount of restitution ... shall be *imposed* by the court at the time of sentencing." Colo. Sess. Laws 1996, ch. 288 at 1778 (emphasis supplied).

In response to our order directing the parties to address the effect of this

amendment on the issue presented here, defendant cites legislative history indicating that the amendment and related restitution provisions enacted at the same time were (1) aimed primarily at offenders sentenced to probation, and (2) not intended to affect the authority of the parole board to order restitution as a condition of parole and fix the manner and time of performance of the restitution obligation. He argues that construing § 16–11–102(4) to permit a court to enter a restitution order against a defendant facing incarceration is inconsistent with that legislative history and would potentially subject such defendants to conflicting restitution orders, "double collection efforts," and continued accumulation of late payment penalty fees on the amount of restitution ordered by the court but not paid. We are unpersuaded.

In *People v. Tipton*, 973 P.2d 713 (Colo. App.1998), a division of this court considered the 1996 amendment to § 16–11–102(4), concluded that courts are now required to impose restitution at the time of sentencing, and held that the trial court did not err in ordering that money taken from a defendant sentenced to incarceration could be applied towards satisfaction of a judgment for payment of restitution and costs.

Notwithstanding the legislative history cited by defendant, we agree with the division in *Tipton* that, when the statutory scheme resulting from the 1996 enactments is read as a whole, it evidences an intent to have courts enter restitution orders even where a defendant is sentenced to incarceration.

When the court enters its restitution order and judgment, the party in whose favor it is entered can seek to collect the judgment in the same manner as any civil judgment. Section 16–11–101.5(1), C.R.S.1998. If the judgment is against a state prisoner and remains wholly or partly unsatisfied, the superintendent of the prisoner's correctional facility "may fix the manner and time of payment of restitution ... and may direct that a portion of the [prisoner's] wages ... or compensation ... be applied to any unpaid restitution." Section 16–11–101.6(5), C.R.S.1998. Finally, if an incarcerated defendant is to be paroled and still owes unpaid restitution, the parole board fixes the manner

and time of performance of the restitution obligation, as it has done in the past. Section 17–2–201(5)(c)(I), C.R.S.1998.

As to defendant's concern about the accumulation of late payment penalty fees, we note that § 16–11–101.6(1), C.R.S.1998, another provision enacted in 1996, permits the trial court to waive or suspend such fees if a defendant does not have the financial resources to pay them. Further, inasmuch as only one judgment for restitution is entered and the judgment creditor is not entitled to have the judgment satisfied more than once, there is no basis for defendant's concern regarding "double collection" efforts.

Reading the statutory scheme in this way gives effect to the General Assembly's 1996 enactments, helps ensure that crime victims will receive restitution, and does not infringe on the authority of the parole board or on an incarcerated defendant's due process rights.

Consistent with this interpretation of the relevant statutes, we conclude that the trial court did not exceed its authority in entering the restitution order at issue here.

The judgment of conviction and order of restitution are affirmed.

Judge DAVIDSON and Judge BRIGGS, concur.