Adam JONES, Plaintiff–Appellant,

v.

COLORADO DEPARTMENT OF CORRECTIONS; John Suthers, Executive Director; Bent County Correctional Facility; Marlene Ybarra, Inmate Accounts; and Brent Crouse, Warden, Defendants–Appellees.

No. 01CA1698.

Colorado Court of Appeals, Div. IV.

July 18, 2002.

Adam Jones, Pro Se.

Ken Salazar, Attorney General, Juliana M. Zolynas, Assistant Attorney General, Denver, Colorado, for Defendants–Appellees Colorado Department of Corrections and John Suthers.

Hall & Evans, L.L.C., David R. Brougham, Andrew D. Ringel, Denver, Colorado, for Defendants–Appellees Bent County Correctional Facility, Marlene Ybarra, and Brent Crouse.

Opinion by Judge ROTHENBERG.

Plaintiff, Adam Jones (inmate), appeals the trial court's order dismissing his complaint against defendants, the director of the Colorado Department of Corrections, the Bent County Correctional Facility, the facility's warden, and its head of inmate accounts, seeking to recover funds that were withheld from inmate's prison account and used to satisfy his outstanding restitution obligations. We affirm.

## I. Background

Inmate pled guilty to multiple counts of theft and was sentenced in January 1998 to twenty years incarceration with the department. He was ordered to pay over $296,000 in restitution and other costs. The court did not specify the time or manner for such payments. Inmate began serving his sentence at the facility, which is a private entity that contracts with the department to provide correctional services for it.

At the time of inmate's sentencing, the trial court was statutorily required to impose restitution equivalent to the full pecuniary loss caused by inmate's offense. Colo. Sess. Laws.1996, ch. 88, § 16–11–102(4) at 1778; see People v. Apodaca, 998 P.2d 25, 31 (Colo.App.1999)(former statutory scheme in-

tended "to have courts enter restitution orders even where a defendant is sentenced to incarceration").

Such restitution orders automatically became final judgments in favor of any entity suffering losses caused by the convicted offender. Colo. Sess. Laws 1997, ch. 65, § 16–11–101.5(1) at 1551. If the judgment remained unsatisfied while the offender was serving a prison sentence, the statute provided that "the superintendent of the correctional facility ... may fix the manner and time of payment of restitution ... and may direct that a portion of the [prisoner's] wages ... or compensation be applied to any unpaid restitution." Colo. Sess. Laws 1996, ch. 88, § 16–11–101.6(5) at 1778; see People v. Apodaca, supra.

If the prisoner still owed restitution at the time of his or her release on parole, the parole board then became responsible for setting the time and manner of the restitution obligation. Colo. Sess. Laws 1996, ch. 88, § 17–2–201(5)(c)(I) at 1779; see People v. Apodaca, supra.

In 2000, the General Assembly significantly amended the criminal restitution scheme. The changes became effective on September 1, 2000, and apply "to orders for convictions entered on or after [September 1, 2000] and delinquencies of orders existing on or after said date." Colo. Sess. Laws 2000, ch. 232, sec. 25(2) at 1053. The amended statute provides in relevant part:

(2) During any period of time that a defendant is a state prisoner ... the executive director of the department of corrections, or his or her designee, may fix the time and manner of payment of restitution and may direct that a portion of the deposits into such inmate's bank account be applied to any unpaid restitution. At a minimum, the executive director shall order that twenty percent of all deposits into an inmate's bank account, including deposits for inmate pay shall be deducted and paid toward any outstanding order from a criminal case....

(3) Whenever a defendant is released from a correctional facility, the defendant shall be obligated to make payments for restitution as required by section 17–2–201(5)(c)(I), C.R.S.

Section 16–18.5–106, C.R.S.2001; see also Colo. Sess. Laws 2002, ch. 28, sec. 2 at 68 (enacted March 22, 2002, further amending § 16–18.5–106(2), effective immediately, as it applied "to existing court ordered costs, surcharges, [and] restitution ... resulting from a criminal case ... that are outstanding on or after the date of passage").

The department adopted a regulation pursuant to the 2000 changes. The regulation became effective September 1, 2000, and required that "[t]wenty percent (20%) of all deposits into an inmate's bank account, including deposits for inmate pay will be deducted and paid toward any outstanding order from a criminal case (e.g., restitution and other costs or surcharges levied on criminal actions)." See DOC Admin. Reg. No. 200–15. The department also required correctional facilities, such as the one involved here, to collect restitution from inmates who owed restitution.

Based on that regulation, the facility began deducting twenty percent from all deposits made to the accounts of all inmates who owed restitution.

DOC Admin. Reg. No. 850–04 provides a grievance process for inmates' complaints about a facility's policies and its management if inmates. The regulation also requires a facility to maintain a record of an inmate's grievances and the department to issue a specific response to the grievance.

On September 21, 2000, the facility posted a notice notifying inmates that grievances concerning these deductions would not be individually addressed for a period of six months because of the large number of "repetitive/duplicate grievances." The notice further provided, as relevant here, that all such grievances were subject to the rule that twenty percent "of all deposits (including inmate pay and incoming money orders) into an inmate's bank account will be deducted and paid toward ANY OUTSTANDING order from a criminal case ... existing on or after September 1, 2000."

In December 2000, inmate filed this action in district court, asserting jurisdiction under

§ 24–4–106, C.R.S.2001, and C.R.C.P. 106(a)(4) and demanding the return of the funds the facility had withheld from his account.

The department and the director moved to dismiss, asserting that the district court lacked jurisdiction to hear the inmate's complaint and that their actions in adopting the regulation and withholding the funds were administrative decisions which are not reviewable under C.R.C.P. 106(a)(4).

Inmate replied to the motion to dismiss, contending for the first time that he had filed a grievance pursuant to the department's grievance procedure and that he had been denied relief. In his opening brief filed in this court, inmate again claims to have followed the department's applicable grievance procedure and to have been denied relief. However, the appellate record includes no evidence that inmate ever initiated a grievance procedure involving his restitution obligation pursuant to DOC Admin. Reg. No. 850–04, and therefore, no adjudication of inmate's rights occurred.

The district court granted the motion to dismiss, stating inter alia that it "adopts, approves, and incorporates herein the arguments advanced and authorities cited ... in [the] motion to dismiss."

## II. Jurisdiction

Inmate contends the trial court had jurisdiction pursuant to § 24–4–106 and C.R.C.P. 106(a)(4) and therefore erred in dismissing his complaint. We disagree.

### A. Review Under § 24–4–106

■ We reject inmate's contention that the district court had jurisdiction pursuant to § 24–4–106.

Section 24–4–106 establishes the procedures for obtaining judicial review of final agency actions for which review is not otherwise available. *Crawford v. State*, 895 P.2d 1156 (Colo.App.1995). However, § 17–1–111, C.R.S.2001, limits the availability of this remedy and provides in relevant part: "The provisions of this title *relating to the ... management [and] discipline ... of inmates ...*

shall not be subject to section ... 24–4–106, C.R.S." (emphasis added).

In *Crawford v. State, supra,* 895 P.2d at 1157, a panel of this court rejected an inmate's attempt to seek § 24–4–106 review of a prison disciplinary action, concluding that "any right which may have existed to obtain review of a prison disciplinary action under the APA was eliminated by the enactment of § 17–1–111."

Although the facility's withholding of funds from inmate's account pursuant to the department's regulation was not a prison disciplinary action, we conclude the facility's action pertains to the management of inmates because it controls how they may spend their funds. Under the statute in effect when inmate was sentenced, the facility superintendent was required to fix the time and manner of restitution payments. After the 2000 amendments, the director or a designee thereof was given this responsibility and, pursuant to the regulation, the director delegated this management function to the facility. *See* Webster's Third New International Dictionary 1372 (1976)("manage" means as relevant here "to control and direct ... to make and keep (one) submissive").

■ Accordingly, we conclude § 24–4–106 does not apply to the adjustment of the timing and manner of inmate's restitution payments. *See Crawford v. State, supra.*

### B. Review Under C.R.C.P. 106(a)(4)

■ Inmate next contends the district court had jurisdiction pursuant to C.R.C.P. 106(a)(4) because the adoption of the regulation to withhold twenty percent of the deposits to his account and the enforcement of that regulation constituted quasi-judicial actions. Again, we disagree.

C.R.C.P. 106(a)(4) provides in relevant part:

Where any governmental body or officer or any lower judicial body exercising judicial or quasi-judicial functions has exceeded its jurisdiction or abused its discretion, and there is no plain, speedy and adequate remedy otherwise provided by law:

(I) Review shall be limited to a determination of whether the body or officer has

exceeded its jurisdiction or abused its discretion, based on the evidence in the record before the defendant body or officer.

We review de novo the trial court's determination whether a plaintiff was seeking review of a quasi-judicial function or a legislative function of a governmental body. *See City & County of Denver v. County Court,* 37 P.3d 453 (Colo.App.2001).

■ Quasi-judicial actions are characterized by the following factors: (1) a local or state law requiring that notice be given before the action is taken; (2) a local or state law requiring a hearing before the action is taken; and (3) a local or state law directing that the action result from the application of prescribed criteria to the individual facts of the case. *Gilpin County Board of Equalization v. Russell,* 941 P.2d 257, 262 (Colo.1997)("Quasi-judicial action focuses on the application of legislative or quasi-legislative requirements to an individual under a particular set of facts."); *see also Baldauf v. Roberts,* 37 P.3d 483 (Colo.App.2001)(certain actions taken pursuant to Colorado Department of Corrections disciplinary procedures are quasi-judicial because the procedures prescribed notice and hearing requirements).

■ A quasi-legislative action affects the rights of individuals in the abstract and must be applied in a later proceeding involving specific individuals before it is subject to judicial review. *Prairie Dog Advocates v. City of Lakewood,* 20 P.3d 1203 (Colo.App. 2000). An example includes the formulation of regulatory policy of general application to an affected group. *Gilpin County Board of Equalization v. Russell, supra.* Quasi-legislative actions are prospective in nature, are of general application, and require the balancing of questions of judgment and discretion. *Jafay v. Board of County Commissioners,* 848 P.2d 892 (Colo.1993).

Here, the director followed the directive of the 2000 statute which required him to "fix the time and manner of payment of restitution" for all prisoners. Neither the statute in effect when inmate was sentenced nor the one in effect in September 2000 provided for notice or a hearing regarding the time and manner of enforcing a restitution order. The applicable statute also required that the director withhold twenty percent of all deposits into an inmate's account if that inmate owed restitution. *See* § 16–18.5–106.

Pursuant to this statute, the director ordered the facilities under his direction to implement the regulation, and these facilities included the one in which inmate was incarcerated. The regulation applied generally to all prisoners owing restitution, and in withholding twenty percent of the deposits to the prisoners' accounts, the facility was enforcing the regulation against all prisoners who owed restitution. Hence, the facility's enforcement of the regulation was not specifically directed against inmate.

We therefore conclude that because inmate was not challenging a judicial or quasi-judicial action of the department or the facility, the district court lacked jurisdiction under C.R.C.P. 106(a)(4) and did not err in dismissing the complaint on that basis.

Given our conclusions, we do not address inmate's contentions that the trial court erred in treating defendants' motion to dismiss as confessed or that the court violated his constitutional rights. We observe, however, that another panel of this court has addressed and rejected similar arguments. *See People v. Lowe,* —— P.3d ——, 2002 WL 1577804 (Colo.App. No. 01CA1876, July 18, 2002)(rejecting argument that statute permitting the withholding of funds from an inmate's prison account violated his constitutional rights).

Order affirmed.

Judge NEY and Judge VOGT concur.