The PEOPLE of the State of Colorado,
Plaintiff–Appellee,

v.

Haywood JENKINS, Defendant–
Appellant.

No. 01CA1336.

Colorado Court of Appeals,
Div. IV.

Feb. 27, 2003.

As Modified on Denial of Rehearing
May 15, 2003.

Certiorari Denied Jan. 26, 2004.

Ken Salazar, Attorney General, Patricia R. Van Horn, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

James Grimaldi, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge KAPELKE.

Defendant, Haywood Jenkins, appeals the judgment of conviction entered upon a jury verdict finding him guilty of attempted murder and first degree assault. He also appeals his habitual criminal adjudication and sentence. We affirm.

According to the prosecution's evidence, shortly after moving in with the victim and her children, defendant began abusing the victim both mentally and physically. One night, after the victim refused to perform oral sex, defendant poured gin mixed with rubbing alcohol on her and set her on fire. Although the victim was seriously burned, defendant' kept her in her room, prevented her from seeking medical attention and from having contact with her children, and repeatedly threatened to kill her. After six days, defendant finally relented and drove her to a hospital, instructing her to report that she had been injured in a cooking fire. He told her he would be home alone with her children and would kill them if she told anyone the truth about what had happened.

The victim told hospital personnel she had been injured in a grease fire. When pressed for details, however, she either stopped talking or gave inconsistent accounts. After about two weeks of treatment, the victim was released from the hospital. She remained bedridden for about a year.

Eventually, the victim reported the incident.

## I.

Defendant contends that the trial court's denial of his pro se motion for substitution of counsel violated his due process right to assistance of counsel. We disagree.

A defendant's motion to discharge an attorney is addressed to the sound discretion of the trial court, and its ruling will not be disturbed on review absent an abuse of discretion. *People v. Apodaca*, 998 P.2d 25 (Colo.App.1999).

An indigent defendant is entitled to effective appointed counsel, but is not entitled to new counsel of his or her choice. Further, a defendant must demonstrate good

cause to require substitution of counsel. *People v. Fisher,* 9 P.3d 1189 (Colo.App. 2000).

■■ When an indigent defendant moves to discharge counsel, the trial court must inquire into the reasons for the dissatisfaction. *People v. Apodaca, supra.* Before change of counsel is warranted, the court must determine that the defendant has some well-founded reason for believing that the appointed attorney cannot or will not completely represent him or her. If the defendant establishes good cause, such as a conflict of interest or a complete breakdown of communication, the court must appoint substitute counsel. *People v. Arguello,* 772 P.2d 87 (Colo.1989). Conversely, if the court has a reasonable basis for concluding the attorney-client relationship has not so deteriorated that counsel could not provide effective assistance, the court can properly refuse to appoint new counsel. *People v. Apodaca, supra.*

Here, prior to trial, defendant filed a motion to dismiss his counsel and for appointment of alternative counsel. Defendant argued that his counsel was not defending him zealously and had not spent adequate time with him to obtain the details and information necessary to investigate possible defenses. Specifically, defendant asserted that his attorney met with him only once in nine months, had not discussed potential witnesses, and had not given him copies of discovery, which he said he needed to review to help plan trial strategy.

The court held a hearing on defendant's motion. At the hearing, defendant stated, "I just would like to have something done in my favor, you know? I have been sitting there and never even talked to anybody and stuff, all the way to January 3. He said he would get on it and check and subpoena some things for the record and stuff like that."

The court denied the motion, noting that defendant was not claiming a conflict of interest, but instead asserting that counsel's preparation for trial had been inadequate. The court stated that it was familiar with counsel's experience, expertise, and thoroughness and was satisfied with counsel's "professionalism, expertise, and zeal."

The record indicates that the court did not make any further inquiry as to defendant's stated concerns, nor did it ask for any response by counsel. The court appeared to base its denial of the request on its assessment of defense counsel's general expertise and zeal, rather than on counsel's level of performance in this specific representation. We read *People v. Arguello, supra,* as contemplating a more fact-specific inquiry than that conducted by the trial court here.

Nevertheless, the record substantiates the court's conclusions that defendant was not asserting a conflict of interest and that he had not shown a complete breakdown of communication. Nor had he shown any prejudice from counsel's failure to take specific steps in the representation.

Under the circumstances, we therefore find no abuse of discretion by the trial court in denying defendant's motion for substitute counsel.

## II.

■■ Defendant next contends that the trial court violated his right to due process and a fair jury trial by allowing an expert witness to express opinions outside the scope of his field of expertise. We disagree.

■■ Trial courts have broad discretion in determining the admissibility of expert testimony pursuant to CRE 702, and the exercise of this discretion will not be overturned absent manifest error. *Lanari v. People,* 827 P.2d 495 (Colo.1992).

■■ CRE 702 governs the trial court's determination regarding the admissibility of expert testimony. The court's inquiry should focus on whether the proffered evidence is both relevant and reliable. The court must determine the reliability of the principles underlying the expert's opinion, the qualifications of the witness, and the usefulness of the testimony to the jury. *People v. Shreck,* 22 P.3d 68 (Colo.2001).

Here, the physician who treated the victim's burns was accepted by the court as an expert witness in the area of general surgery

and as a critical care physician "having to do with burn care."

During his testimony, the witness stated that the victim's burns were inconsistent with the type of burns she would have received from a grease fire or a pressure cooker.

The witness also testified that the pattern of the victim's burns indicated that her back had been resting against something and been protected from the flames. He then stated that the burn pattern was consistent with the prosecution's scenario that when rubbing alcohol was poured on the victim's body and lighted, she had been sitting in bed, with her back against the wall, wearing a nightgown and a pair of underpants with an elastic waist.

This testimony was properly admitted under CRE 702. The witness had extensive knowledge and experience with burns and burn patients. He had participated in a study of fabric inflammability involving analysis of differing burn patterns on various types of clothing. His education, experience, and knowledge as a physician studying burns and treating burn victims allowed him to give specialized testimony that would assist the jury in understanding the physical evidence concerning the burns and in assessing whether that evidence was consistent with the other evidence and the parties' theories of the case.

While the witness acknowledged that, without extrinsic information, he could not determine what the victim had been wearing, such an acknowledgment goes to the weight rather than the admissibility of the testimony.

We thus find no error.

### III.

Defendant next contends that the trial court erred in allowing a psychologist to testify concerning the credibility of the victim and to base her opinion testimony on the criminal charges filed against defendant. We reject the contention.

An expert may not give opinion testimony as to whether a witness is telling the truth on a specific occasion. *People v.*

*Lafferty,* 9 P.3d 1132 (Colo.App.1999). However, under CRE 702, an expert may testify concerning whether the victim's behavior or demeanor is consistent with that of typical victims of abuse. *People v. Fasy,* 829 P.2d 1314 (Colo.1992). Further, an expert witness may base an opinion on facts or data perceived by or made known to him or her at or before the hearing. CRE 703.

Here, the psychologist who provided counseling to the victim at the hospital was received by the court as an expert in psychology and psychological treatment of those suffering from trauma, particularly trauma from burns. The psychologist testified that the victim had seemed fearful and very quiet, refusing to discuss any details of the events. She testified that she found it very unusual for a burn patient—especially one with such serious and painful burns—to wait six days to come in for treatment and that it was also unusual for burn patients not to want to talk about their injuries. The psychologist also stated that although the victim was having a very hard time with pain, she would not cooperate at all in learning how to manage her pain better.

The psychologist testified that when she treated the victim, she did not believe the injuries resulted from an assault. However, she felt there was "something [the victim] wasn't telling us." She further testified she had treated between fifteen and twenty patients who received their burns as the result of an assault. According to her, such patients generally did not feel safe and had more problems managing pain than non-assault burn victims, because the pain was a constant reminder of what someone had done to them.

She then opined that the victim's behavior was consistent with that of a person burned as a result of assault. She stated that she did not form this opinion when she treated the victim, but instead when she later heard that assault charges had been filed.

The psychologist did not testify that the victim's burns had been caused by an assault. Rather, she stated that the victim's behavior was consistent with that of a patient whose burns were the result of an assault. As

permitted by CRE 703, she based her opinion on facts made available to her before the trial. Contrary to defendant's assertion, she was not basing her conclusion on the state's decision to prosecute defendant, but rather on the fact that the assault scenario would explain the victim's behavior, which was consistent with that of an assault victim.

Defendant also contends that the psychologist's testimony was inadmissible because it addressed the credibility of a witness in the trial. We disagree.

During the psychologist's testimony, defendant objected on the ground that she was testifying as to the victim's credibility. The court overruled the objection, finding that "all she is doing is giving opinion consistent with and incorporated in her area of expertise which is a characterization of behaviors manifested by [the victim] while she was under the doctor's care."

As discussed, this testimony did not focus on the victim's credibility, but instead on the fact that her behavior, including her delay in seeking treatment, was consistent with the alleged assault scenario.

We therefore perceive no error.

### IV.

■ Defendant next contends that the trial court violated his constitutional right to be present and his right to counsel by responding to two jury questions outside the presence of counsel. We perceive no basis for reversal.

The record does not include a transcript showing that the trial court's responses were made outside the presence of defendant and his counsel. But, even if the court's responses were so made, there is no reversible error.

■ The defendant in a criminal case has a fundamental right under the Colorado Constitution to have counsel present when the court responds to questions from the jury. *Key v. People*, 865 P.2d 822 (Colo. 1994). Defense counsel has the right to present argument and to make objections to the court's responses. Therefore, a trial court commits constitutional error by responding to the jury's questions without first

making reasonable efforts to obtain the presence of defense counsel. *Leonardo v. People*, 728 P.2d 1252 (Colo.1986).

■ In cases of constitutional error involving the right to counsel, reversal is required unless the reviewing court concludes that the error was harmless beyond a reasonable doubt. *Leonardo v. People, supra.*

Here, after the jury began deliberations, it submitted to the court two questions. The first question read: "Could we have access to the timeline chart, witness chart and the testimony tape of [the victim]." The court made this written response: "The timeline chart and witness charts were not admitted into evidence and are therefore not to be taken to the jury room. You may see the video of [the victim] played by the court bailiff." The court's response concerning the videotape reflected the parties' prior agreement.

The second question read: "Is it possible for us to have access to [two witnesses'] testimony during trial? We are getting involved in lots of speculation and it is clouding our decision-making progress." The court responded: "My ruling is based on prior rulings. No transcripts of witness testimony are allowed to go to the jury, so the answer is no. Also, purely from a practical perspective, the transcripts do not exist, and [the court reporter] is not here to provide them."

■ A trial court's determination whether to allow the jury to review a transcript of trial testimony is a matter of sound discretion. Here, as in *Franklin v. People*, 734 P.2d 133 (Colo.App.1986), because defendant has not shown an abuse of that discretion or any reasonable likelihood of prejudice, even if the court's responses were made outside the presence of defense counsel, the constitutional error was harmless beyond a reasonable doubt. *See Key v. People, supra; Franklin v. People, supra.*

### V.

■ Defendant next contends that the trial court violated his right to due process and the prohibition against double jeopardy by retracting a directed verdict of acquittal

on the charge of attempted first degree murder. We disagree.

██ Any judicial effort to avoid a deadlocked jury must ensure that the trial court does not authorize the jurors to sacrifice any of their conscientious opinions for the sake of reaching a unanimous verdict. *Lowe v. People*, 175 Colo. 491, 488 P.2d 559 (1971).

In *People v. Lewis*, 676 P.2d 682 (Colo. 1984), the supreme court offered guidelines for instructing a deadlocked jury deliberating on a charge involving lesser offense. The court should first ask the jury whether further deliberation will yield progress towards a unanimous verdict. If the jury indicates that progress toward a unanimous verdict is unlikely, the court should inquire whether the jury is divided over guilt as to any one of the offenses and nonguilt as to all the offenses, or whether the division centers only on the particular degree of guilt. If the jury deadlock concerns only the degree of guilt, the court should consider an additional instruction charging the jury to return a guilty verdict on the lesser offense, so long as every essential element of the lesser offense is necessarily included in the greater offense and all the jurors unanimously agree on the defendant's guilt as to either the lesser or the greater offense under consideration.

Here, on the third day of deliberations, the jury sent the court a note reading: "We have reached an impasse [o]n the count of 1st Degree Attempt to Murder. Our vote as of this time is 11–1. What is our next step?"

The court held a hearing and followed the procedures set forth in *People v. Lewis, supra*. After determining the deadlock related to whether to convict on the offense of first degree murder, the court instructed the jury:

> You have previously been instructed on the lesser included offense ... which goes along with attempted murder in the first degree, and that's a part of your instructions. If there is unanimity as to the lesser included offense, the Court directs that you should return a verdict as to the lesser included offense, as to that count, provided there is unanimity—everyone agrees. And then I direct that you should deliberate as to the remaining counts.

Later that day, the jury sent out another note asking for a fuller explanation of the word "culpable." The note also asked whether the jury still could render a guilty verdict on the attempted first degree murder count. The court replied in a written note that the term "culpable" was defined in the jury instructions and that, because no verdict had been received by the court as to any charge, the jury might return any verdict upon which there was unanimous agreement.

The trial court correctly followed the procedures set forth in *People v. Lewis, supra*, and defendant has not demonstrated that the court authorized the jurors to sacrifice any of their conscientious opinions for the sake of reaching a unanimous verdict. Further, we reject defendant's assertion that the court actually entered a directed verdict or that, by its comments, the court precluded the jury from ultimately arriving at a unanimous not guilty verdict on the attempted first degree murder charge.

The court indicated that the jury should return the guilty verdict on the lesser charge only if it had reached a unanimous decision as to that charge. Notably, defendant's trial counsel did not interpret the court's instruction as a directed verdict, nor do we. *Cf. United States v. Rivas*, 99 F.3d 170 (5th Cir.1996)(rejecting contention that a "cease deliberating" instruction constitutes a direct verdict implicating double jeopardy rights).

We therefore find no error.

## VI.

██ Defendant contends that the trial court violated his constitutional right to due process by holding that any collateral challenge to allegedly unconstitutional prior convictions used in the habitual criminal proceeding was time barred. We disagree.

Absent a showing of justifiable excuse or excusable neglect, a collateral attack upon any felony conviction other than a class 1 felony is time barred if not brought within three years of the conviction. Section 16–5–402, C.R.S.2002; *People v. Wiedemer*, 852 P.2d 424 (Colo.1993).

**1130**

■

■ Whether a defendant has shown justifiable excuse or excusable neglect is a question of fact to be resolved by the trial court. *People v. Wiedemer, supra.*

■ While it is a violation of due process to use unconstitutional convictions in a later criminal proceeding to enhance punishment, *People v. Padilla,* 907 P.2d 601 (Colo.1995), a state may attach reasonable time limitations to the assertion of federal constitutional rights. *See People v. Wiedemer, supra; People v. Vigil,* 983 P.2d 805 (Colo.App.1999).

Here, defendant was charged with four habitual criminal counts. Defendant filed a motion challenging his prior convictions, and following a hearing, the court determined that defendant had not shown justifiable excuse or excusable neglect and that collateral attack on three of the convictions was therefore time barred. The court then concluded that the fourth conviction had been constitutionally obtained and could be used in the habitual criminal proceeding.

The court acted properly in examining each prior conviction and determining that defendant had not established justifiable excuse or excusable neglect as to the lateness of his challenges. We thus find no error.

## VII.

Finally, defendant contends that his conviction should be reversed because of cumulative error. We disagree.

■ Although an appellate court may find that individual errors do not require reversal, numerous irregularities may in the aggregate show the absence of a fair trial. *People v. Roy,* 723 P.2d 1345 (Colo.1986).

Here, we conclude that any errors, considered either individually or cumulatively, did not deprive defendant of a fair trial.

The judgment and sentence are affirmed.

Judge ROTHENBERG and Judge DAILEY concur.