25CA0984 Inman v CDOC 06-25-2026

COLORADO COURT OF APPEALS

Court of Appeals No. 25CA0984
Logan County District Court No. 25CV4
Honorable Dina M. Christiansen, Judge

Paul Inman,

Plaintiff-Appellant,

v.

Executive Director of Colorado Department of Corrections and Warden of
Sterling Correctional Facility,

Defendants-Appellees.

JUDGMENT AFFIRMED

Division VII
Opinion by JUDGE MEIRINK
Pawar and Sullivan, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced June 25, 2026

Paul Inman, Pro Se

Philip J. Weiser, Attorney General, Rebekah Ryan, Senior Assistant Attorney
General, Denver, Colorado, for Defendants-Appellees

¶ 1    Plaintiff, Paul Inman, appeals the district court's judgment dismissing his C.R.C.P. 106(a)(4) complaint against defendants, the Department of Corrections (DOC) and its Executive Director, for lack of subject matter jurisdiction. We affirm.

## I.    Background

¶ 2    After being convicted of numerous offenses in several cases, Inman was sentenced in April 1996 to the custody of the DOC for a term of seventy-three years. Between 1996 and 2022, the DOC awarded Inman earned time credits and calculated a parole eligibility date of December 2024. In November 2024, the parole board granted Inman discretionary release, to become effective January 30, 2025. Consistent with the DOC's procedure, the discretionary release decision triggered a standard audit of Inman's sentence computation.

¶ 3    The audit revealed that the DOC had been awarding Inman earned time credit without having the statutory authority to do so. Specifically, the DOC applied the wrong subsection of the parole eligibility statute, section 17-22.5-403, C.R.S. 2025, to Inman's sentence. The DOC had been using section 17-22.5-403(2) to calculate Inman's parole eligibility date after discounting his earned

time credit, when it should have used section 17-22.5-403(3) to calculate Inman's parole eligibility date. Under subsection (3), an inmate who has been convicted of two crimes of violence isn't parole eligible until they have served at least seventy-five percent of their sentence, and subsection (2), which allows for the reduction of earned time credit from time served, states that its provisions "shall not apply to any such offender." Because he had two prior convictions for crimes of violence, the DOC was statutorily prohibited from applying Inman's earned time credit to reduce his sentence.

¶ 4        Applying the proper subsection of the statute, Inman's mandatory release date is April 18, 2068, and his parole eligibility date is February 1, 2032. The DOC notified Inman of the error, and the parole board rescinded its order granting discretionary release.

¶ 5        Representing himself, Inman filed a complaint under C.R.C.P. 106(a)(4), seeking judicial review of the DOC's decision to rescind "the vested award of approx[imately] 3,365 days of earned time [credit]" from his time computation after the parole board had already granted him parole. The DOC moved to dismiss, arguing that any award or revocation of earned time was a purely

administrative process within the DOC's discretion that didn't entail a hearing and wasn't a quasi-judicial action. Because judicial review of DOC actions under C.R.C.P. 106(a)(4) is available only for judicial or quasi-judicial actions, the DOC claimed that the court lacked subject matter jurisdiction to hear Inman's claims. The district court agreed and granted the DOC's motion to dismiss, concluding that the award or revocation of earned time was an administrative process within the DOC's discretion and not a quasi-judicial action subject to C.R.C.P. 106(a)(4).

## II. Analysis

¶ 6 Inman is self-represented and raises three arguments on appeal: (1) the district court abused its discretion when it dismissed his C.R.C.P. 106(a)(4) petition; (2) the DOC abused its discretion when it withdrew his vested and previously awarded earned time credit in contravention of the parole board's decision to grant parole; and (3) the DOC violated his due process rights under the Fifth and Fourteenth Amendments by withdrawing his vested earned time and denying his parole without providing notice or holding a hearing.

3

¶ 7    Although Inman contends that the DOC abused its discretion when it withdrew the previously awarded earned time credit and violated his constitutional rights by doing so without providing him with due process, the only matter properly before us is whether the district court had subject matter jurisdiction to review his C.R.C.P. 106(a)(4) complaint.

¶ 8    We are mindful of the challenges inherent in self-representation and acknowledge Inman's frustration.  But our review is limited to whether the district court had subject matter jurisdiction to consider Inman's complaint, and the merits of Inman's second and third issues fall outside that narrow scope.  We therefore cannot address them.  *See Gandy v. Williams*, 2019 COA 118, ¶ 8 (recognizing that appellate courts liberally construe the filings of self-represented litigants while applying the same law and procedural rules applicable to parties represented by counsel).

A.    Applicable Law and Standard of Review

¶ 9    Subject matter jurisdiction concerns the court's authority to decide a particular matter, and a judgment rendered without subject matter jurisdiction is void.  *In re Support of E.K.*, 2013 COA 99, ¶ 8.  "If a court does not have subject matter jurisdiction, it is

deprived of any authority to act from the outset of the case." *People in Interest of C.N.*, 2018 COA 165, ¶ 15.

¶ 10 "When the court's subject matter jurisdiction is challenged, the plaintiff has the burden of proving that jurisdiction exists, and the trial court may consider evidence outside of the complaint when necessary to resolve the issue." *City of Boulder v. Pub. Serv. Co. of Colo.*, 996 P.2d 198, 203 (Colo. App. 1999).

¶ 11 When a complaint is dismissed for lack of subject matter jurisdiction, we apply a mixed standard of review. *Id.* While the existence of subject matter jurisdiction is a question of law that we consider de novo, we accept the trial court's findings of fact unless they are unsupported by the record and thus clearly erroneous. *Id.*

¶ 12 Rule 106(a)(4) "provides for review of quasi-judicial decisions made by a governmental body or officer in a civil matter where the law otherwise provides no plain, speedy, and adequate remedy." *Brown v. Walker Com., Inc.*, 2022 CO 57, ¶ 1. "Judicial review under C.R.C.P. 106(a)(4) is limited to judicial and quasi-judicial agency action." *Rivera-Bottzeck v. Ortiz*, 134 P.3d 517, 522 (Colo. App. 2006). Administrative actions are not subject to review under C.R.C.P. 106(a)(4). *Id.* at 521-22. Rule 106(a)(4) is the exclusive

remedy for reviewing quasi-judicial decisions. *JJR 1, LLC v. Mt. Crested Butte*, 160 P.3d 365, 369 (Colo. App. 2007).

¶ 13    "[A] proceeding is quasi-judicial if it involves (1) a determination of the interests, rights, or duties of specific individuals and (2) the application of current law or policy to past or present facts." *Hushen v. Gonzales*, 2025 CO 37, ¶ 7. The existence of a statute mandating some basic due process is a clear signal that the governmental decision is quasi-judicial. *Id.* (citing *Cherry Hills Resort Dev. Co. v. City of Cherry Hills Village*, 757 P.2d 622, 627 (Colo. 1988)). We review a trial court's determination of whether a plaintiff was seeking review of a quasi-judicial function of a governmental body de novo. *Jones v. Colo. Dep't of Corr.*, 53 P.3d 1187, 1191 (Colo. App. 2002).

## B.    Discussion

¶ 14    Inman seeks review under C.R.C.P. 106(a)(4) of the DOC's decision to withdraw his earned time credits. But, as indicated above, Inman is entitled to such review only if the DOC's action was quasi-judicial. Because the DOC's decision was administrative, we

conclude that it wasn't quasi-judicial and isn't subject to review under C.R.C.P. 106(a)(4).[1]

¶ 15    The DOC's decision to withdraw Inman's earned time credits didn't have the hallmarks of a quasi-judicial action. Namely, it didn't involve a determination of Inman's rights based on the application of existing legal standards to facts that needed to be developed at a hearing. *See Verrier v. Colo. Dep't of Corr.*, 77 P.3d 875, 879 (Colo. App. 2003) (concluding that because the DOC's establishment of policies concerning earned time deductions didn't determine the plaintiff's rights, duties, or obligations, its actions were not quasi-judicial in nature); *Hushen*, ¶ 23 ("What makes an action quasi-judicial is the impact on the protected rights of specific individuals and a decision reached through preexisting legal standards applied to present or past facts."). Rather, the DOC, acting in an administrative capacity, withdrew the credits, which, by statute, Inman was ineligible to receive.[2]

---

[1] We express no opinion as to the propriety of a mandamus action filed under C.R.C.P. 106(a)(2).

[2] We express no opinion on whether the DOC was authorized under the statutory scheme to administratively withdraw the earned time credits that it had already granted to Inman.

¶ 16     In short, the DOC's withdrawal of Inman's earned time credits wasn't a quasi-judicial action. It was an administrative decision and therefore isn't subject to review under C.R.C.P. 106(a)(4). Because review under C.R.C.P 106(a)(4) is limited to judicial and quasi-judicial actions, the district court properly dismissed Inman's complaint for a lack of subject matter jurisdiction.

### III. Disposition

¶ 17     We affirm the judgment.

JUDGE PAWAR and JUDGE SULLIVAN concur.